Dale B. ANDERSON, Appellant,

v.

SECOND INJURY FUND, State of Iowa and Iowa Industrial Commissioner, Appellees.

No. 60348.

Supreme Court of Iowa.

Feb. 22, 1978.

As Amended March 15, 1978.

Rehearing Denied March 16, 1978.

Paul Moser, Jr., Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Lee M. Jackwig, Asst. Atty. Gen., for appellees.

Considered by REYNOLDSON, Acting C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This action was brought under Iowa's second injury compensation act. Sections 85.63 through 85.69, The Code. Plaintiff's appeal from an adverse ruling is controlled by an interpretation of language in § 85.64, The Code. We affirm the trial court.

Dale B. Anderson (claimant) was involved in a cornpicker accident in 1963. This injury was not compensable under worker's compensation. § 85.1(3), The Code. As a result of the cornpicker accident claimant suffered loss of a part of his right hand, including the index finger, part of the thumb, and various other injuries to the right hand.

Claimant was again injured in 1973, this time in connection with his employment by a feed mill. The 1973 injury was covered by worker's compensation. As a result of the 1973 injury claimant suffered loss of a part of his right arm, the same arm to which the injured hand had been attached. The industrial commissioner indicated claimant had been paid by his employer for this injury on the basis of 73 percent loss of the right arm.

In addition to the 1963 injury to claimant's right hand in the cornpicker accident, and the later injury in 1973 in the feed mill, claimant had two separate injuries to his spine. The two injuries to claimant's spine need not be described because claimant states they are material to a determination of this appeal only in the event claimant is entitled to recovery under the second injury fund. As will appear we believe claimant is not so entitled.

I. Section 85.64, The Code, provides in part as follows:

"*If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ,* the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no pre-existing disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the 'Second Injury Fund' created by this division the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ." (Emphasis added.)

The fact claimant's injury was less than total does not bar his right of recovery from the second injury fund. *Irish v. McCreary Saw Mill,* 175 N.W.2d 364 (Iowa 1970). Our question is whether the language emphasized above in § 85.64 provides for recovery from the second injury fund under the facts presented. Claimant focuses on the language " * * * the loss of or loss of use of another such member or organ * * *." He believes the 1973 compensable injury was a loss of use of another member or organ, distinct and separate from the loss occurring in 1963.

The familiar principles which guide us in statutory construction were summarized in *Doe v. Ray,* 251 N.W.2d 496, 500–501 (Iowa 1977):

" * * * Of course, the polestar is legislative intent. (Authorities). Our goal is to ascertain that intent and, if possible, give it effect. (Authorities). Thus, intent is shown by construing the statute as a whole.

In searching for legislative intent we consider the objects sought to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. (Authorities). However, we must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction. (Authority).

"Finally, we note that in construing a statute we must be mindful of the state of the law when it was enacted and seek to harmonize it, if possible, with other statutes relating to the same subject. (Authority)."

The background and purpose of second injury funds were well explained in Kacena, Workmen's Compensation in Tennessee: The Second Injury Fund, 6 Memphis State U.L.Rev. 715, 716–719 (1976):

"II. The Concept of the Second Injury Fund. The milieu in which the second or subsequent injury fund statute operates is the situation of an individual within the labor force, whether or not he is at the moment an 'employee' within the meaning of the Workmen's Compensation Act, who is suffering from some condition of permanent disability that affects his employability. The source of this pre-existing disability is normally of no importance but it must be permanent and must tend to act as a hindrance to the individual's ability to obtain or retain effective employment. Such individuals are what society commonly refers to as 'the handicapped,' and the primary purpose of second injury fund statutes is to encourage the hiring of the handicapped.

"Upon the enactment of workmen's compensation statutes in most states during the third and fourth decades of this century, it quickly became apparent to most employers that it could be much more expensive to employ partially disabled or handicapped workers in their businesses than it would be to employ healthy, unimpaired individuals. The reason was that most state workmen's compensation statutes, then as now, provided for specific, scheduled benefits to be paid to employees who incur permanent disabilities on the job consisting of a certain percentage of their previous average weekly wages for a certain number of weeks. The number of weeks the benefits can be received depends on the severity of the disability; * * *. On the other hand, when a worker suffers an injury that renders him permanently and totally disabled, the scheduled benefit period is much longer than for partial disabilities. Therefore, if an employer hires a worker who is perfectly healthy and subsequently that worker loses his eye while on the job, the employer's liability would be limited to the scheduled amount for loss of an eye. But if an employer hires a worker who is already blind in one eye, or has already lost an arm or a leg, and that worker subsequently loses his other eye, arm, or leg while on the job, the employer's compensation liability would be much greater than just the scheduled benefit for loss of that member. The combined effect of the two losses would very likely be total disability, and the employer would, under the earliest workmen's compensation statutes, ordinarily be liable for the entire total disability compensation. This principle is known as the 'full responsibility rule,' and unless a state's workmen's compensation statute has a provision apportioning disability between distinct injuries, the employer's liability does indeed extend to whatever disability the employee has after his single work related injury, regardless of other pre-existing, contributory factors.

" * * *

"Against the background of * * * early principles of subsequent injury law, the 'full responsibility rule' and the 'apportionment statutes', the second injury fund statutes were enacted in most state workmen's compensation laws. Regardless of which of the above principles was adhered to by a state, the ultimate consequences for handicapped, disabled individuals were dire indeed. While the apportionment rules might mean inadequate compensation on which to subsist in the event that a second injury did occur, the full responsibility rule might mean no employment in the first place. The solution to this dilemma was the second injury fund.

"In basic outline, most statutes, * * * provide that when an employee, having previously suffered a permanent disability through the loss of some body member such as an arm, hand, foot, leg, or eye, and subsequently, while working for his present employer, suffers a disability, the effect of which, when taken in combination with the first, is to render the employee permanently and totally disabled, the employer shall be liable only for the disability benefits that would be payable for the second injury alone. This is basically the same effect that was achieved by the apportionment statutes. However, the remainder of the benefits to which the employee would be entitled for his permanent total disability will be paid to him by the state out of the second injury fund. The fund is typically maintained by the state labor department or workmen's compensation commission and is funded by assessments on or contributions from employers, or by public taxes. The authorities are in virtual unanimous agreement that the primary end sought to be achieved by the enactment of second injury fund legislation is to encourage the employment of handicapped persons by removing some of the principal objections that employers have to hiring them. If employers no longer need to fear greatly increased workmen's compensation costs as a result of hiring handicapped employees, then at least there is little rationale for their financial objections. * * * ."

Plaintiff argues handicapped persons are more likely to be hired under his interpretation. The thrust of the argument is that employers are more likely to hire handicapped persons if they can look to the fund in situations such as those presented. But, as explained above by Kinnard, the fear to which second injury funds are addressed is a larger one. The funds were not, as claimant's argument seems to presuppose, premised on any belief handicapped persons are accident prone. Rather the fear was of total or, as in Iowa, near total disability of an employee whose injury, but for a previous one, would be much less financially disastrous to an employer.

We do not believe the language of the statute " * * * the loss of or loss of use of another such member or organ * * " means separate parts of the same arm or leg. Taking the language in the light of its purpose in the over-all scheme of worker's compensation we believe the legislative intent is clear. An employer hiring handicapped persons must provide full worker's compensation benefits for a handicapped employee. If such employee is injured benefits must be paid as if a previous loss of an extremity had not occurred. The employer in the instant case did so and claimant accordingly has been paid on the basis of 73 percent loss of his right arm.

The second injury fund however is not involved because claimant's disability following his 1973 injury is in no way affected by his earlier injury. The disability would now amount to 73 percent loss of the arm with or without the 1963 injury. The trial court was right in holding the facts are inappropriate for benefits under the second injury fund.

AFFIRMED.