SECOND INJURY FUND OF
IOWA, Appellant,

v.

Duaine A. BRADEN, Appellee.

No. 89–1193.

Supreme Court of Iowa.

July 18, 1990.

Rehearing Denied Sept. 19, 1990.

Thomas J. Miller, Atty. Gen., and Robert D. Wilson and Craig Kelinson, Asst. Attys. Gen., for appellant.

Harold B. Heslinga of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal by the Second Injury Fund of Iowa (hereinafter "Fund") from a district court ruling that upheld an industrial commissioner's award of Second Injury Fund benefits for appellee Duaine A. Braden. Boiled down to its essence, the Fund's appeal asks this court to (1) rethink its prior decisions interpreting the Second Injury Fund statute, and (2) rule as a matter of law that Braden's testimony was not worthy of belief and reverse the commissioner's ruling because it is not based on substantial credible evidence. Braden cross-appeals from the district court's adoption of the commissioner's refusal to assess interest on the award. We affirm on the appeal, reverse on the cross-appeal, and remand to the district court for computation of interest.

Our review of this workers' compensation case is for the correction of errors at law, not de novo. *Second Injury Fund v. Mich Coal Co.*, 274 N.W.2d 300, 302 (Iowa 1979). As with all appellate challenges to interpretation of the statutes governing an agency's work, we defer to the expertise of the agency but reserve for this court the final interpretation and construction of pertinent statutes. *Graves v. Eagle Iron Works*, 331 N.W.2d 116, 117 (Iowa 1983). When considering a challenge to the sufficiency of the evidence, "the question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made." *Henry v. Iowa Dep't of Job Serv.*, 391 N.W.2d 731, 734 (Iowa App.1986).

Duaine Braden is a man in his late forties with a ninth-grade education who has worked as a welder and millwright nearly all his life. In 1980 he sustained a work-related injury to his left knee. Surgery was performed to remove a torn portion of the medial meniscus. He received healing period benefits followed by permanent partial disability benefits for fifty-four weeks based on a twenty percent impairment rating. Although his knee continued to swell and, in his words, was "sore all the time," he eventually returned to work as a millwright.

In January 1985, Braden was walking with his foreman when he slipped on ice and landed on his right knee. For this second injury, he also received healing period benefits and forty-four weeks of permanent partial disability payments based on a twenty percent impairment rating of his right lower extremity. Arthroscopic examination of the knee revealed medial compartmental arthritis with significant degeneration. Braden's orthopedic surgeon predicted that a total knee replacement would eventually be required. In the meantime, the physician recommended that Braden stay off his feet and pursue more sedentary work on a permanent basis.

Braden was released to work in June 1986 but has been unable to obtain employment since that time. He testified that both knees continue to be stiff, sore, painful, and weak. He reported an inability to stand more than ten minutes at a time, an inability to walk more than two blocks without experiencing swelling and soreness in his knees, and that he cannot run, climb, jump, or lift without pain.

Braden is currently enrolled in a community college program for training as a parole officer. The deputy industrial commis-

sioner noted the sincerity with which Braden has approached this career goal. Nevertheless, she questioned the likelihood that Braden would succeed in view of his limited scholastic aptitude and the fact that he has not yet received his GED.

Braden's entire work history is composed of jobs that require substantial physical exertion. The deputy industrial commissioner concluded that Braden's injuries have rendered his work skills useless. The deputy concluded that as a result of the combined injuries to both his knees, Braden has sustained a permanent partial disability for industrial purposes of sixty percent or 300 benefit weeks. Because of the benefits already paid by Braden's employers, the hearing officer computed the Second Injury Fund's liability at 212 weeks (300 weeks minus forty-four weeks for first injury and forty-four weeks for second injury) with interest as allowed by Iowa Code section 85.30 (1989). The industrial commissioner affirmed the deputy's ruling except with respect to the assessment of interest. Such interest, the commissioner held, is not authorized by the statute governing the Second Injury Fund, Iowa Code §§ 85.-63–.69. On the Fund's petition for judicial review, the commissioner's ruling was affirmed by the district court. The Fund appeals on the question of its liability for payment and Braden cross-appeals on the denial of interest on his judgment.

I. Central to the Fund's appeal is its disagreement with the way the commissioner and the district court interpreted and applied Iowa Code section 85.64.[1] The Fund claims that its liability has been unlawfully expanded by (1) allowing Braden recovery when his first injury was neither substantial nor handicapping; (2) allowing recovery from the Fund for a "scheduled" second injury; and (3) failing to require, at a minimum, an apportionment of the industrial disability attributable to the second injury. Because the district court applied well-settled principles to affirm the commissioner, we find no merit in any of the Fund's contentions and review them only briefly.

■ A. *Extent of Loss.* The Fund argues that to qualify for benefits the first injury must be a *total* loss of use or, at minimum, "a substantial loss that acts as a handicap to one's employability." Because Braden's first knee injury resulted in only a twenty percent permanent partial impairment, the Fund argues payment to him would be contrary to the purpose for which the Fund was established.

We addressed and answered this same argument twenty years ago in *Irish v. McCreary Saw Mill*, 175 N.W.2d 364 (Iowa 1970). In *Irish* we noted that the Second Injury Fund legislation, as originally enacted in 1945, limited recovery to an employee who was *totally* disabled by a second injury, and it assessed liability for the Fund only for such compensation "as would be payable for *permanent total disability*" after deducting the loss attributable to the first injury. *Id.* at 366–67. Subsequently the statute was amended by striking the references to *total* disability. *Id.* at 367. Viewing the purpose of the amendment as a signal of the legislature's intent to liberalize recovery from the Fund, we held "the phrase 'loss of use' was not intended by the legislature to imply 'total loss of use' of a member of the body, or the body as a whole." *Id.* at 369; *accord Mich Coal Co.*, 274 N.W.2d at 301–02; *Anderson v. Second Injury Fund*, 262 N.W.2d 789, 790 (Iowa 1978).

---

1. The section provides, in pertinent part:

 If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no pre-existing disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this division the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

 Iowa Code § 85.64.

■ The Fund points out that in *Irish* the employee's first injury (loss of an arm) resulted in a ninety percent impairment and, thus, we ought to reexamine our holding and decline to apply it where, as here, the first injury is substantially less severe. Since *Irish*, however, this court has affirmed awards from the Fund where the first injury has resulted in as little as ten percent impairment. *See Second Injury Fund v. Neelans*, 436 N.W.2d 355, 356 (Iowa 1989). It is the *cumulative* effect of scheduled injuries resulting in industrial disability to the body as a whole—rather than the injuries considered in isolation—that triggers the Fund's proportional liability. *Id.* at 357–58. We are not persuaded by the Fund to retreat from that view in the present case and we find no error in the district court's application of the law.

**B.** *"Scheduled" Second Injury.* Braden's first and second injuries resulted in a twenty percent loss of use of each leg. These are "scheduled" losses. Iowa Code § 85.34(2)(o). The Fund argues that the court erred by imposing liability against the Fund where the second injury is scheduled because the payment of additional benefits would not further the purported purpose of the Second Injury Fund—to relieve employers from increased liability due to a preexisting disability.

■ Permanent partial disabilities are classified as either scheduled or unscheduled. *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983). Scheduled injuries are set forth in section 85.-34(2)(a)–(t) which fixes the number of weeks a worker must be compensated for loss of designated body parts. Unscheduled disabilities are those which are not listed in subparagraphs (a)–(t) and instead constitute a disability to the body as a whole. Iowa Code § 85.34(2)(u). The disability referred to in this section is known as "industrial disability, disability to the body as a whole, or simply an 'unscheduled injury.'" *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 835 (Iowa 1986).

■ Section 85.64 provides that where an employee suffers two "scheduled" losses, the employer is liable only for that "degree of disability which would have resulted from the latter injury if there had been no pre-existing disability." Iowa Code § 85.64. The Fund then is liable for "the remainder of such compensation as would be payable for the degree of permanent disability" after deducting the employer's liability for the scheduled value of the injury. *Id.* The Fund asserts that there is no "remainder" to assign to the Fund when the employer's liability is limited to the schedule because the employee has been "fully compensated." The Fund's argument, however, fails to acknowledge that industrial disability can arise from either of two ways: from a single unscheduled injury that affects the body as a whole, or as in Braden's case, from the "cumulative effect" of two scheduled injuries. *Neelans*, 436 N.W.2d at 357.

In this case, the deputy found that Braden's two scheduled injuries together resulted in industrial disability of sixty percent. Assessing liability against the Fund for Braden's unscheduled loss (300 weeks), less the employer's liability for the scheduled losses (eighty-eight weeks), the commissioner's computation follows the Second Injury Fund statute. The assignment of error is without merit.

■ **C.** *Apportioning the Industrial Disability Caused by the Second Injury.* As an alternative to its preceding argument, the Fund argues that its obligation should be reduced by the extent of the industrial disability attributable to the second injury. In other words, the Fund claims it should be liable only for the impact of the employee's *first* injury (as it relates to the injury of the body as a whole) because it is the first disabling injury—exacerbated by a subsequent industrial injury—that is the focus of the Act. Because the commissioner made no such finding, the Fund argues, the case must be remanded for the necessary apportionment in accordance with *Mich Coal Co.*, 274 N.W.2d at 304.

We recently clarified in *Neelans* that the apportionment necessitating remand in *Mich Coal* does not apply where the second injury is scheduled:

The Second Injury Fund argues that the employer must always share a pro rata portion of the compensation provided for disability to the body as a whole to the extent that the second injury contributed to it. We believe the Fund misinterprets section 85.64 and our holding in *Mich Coal*. The language in *Mich Coal* which requires "a factual finding as to the degree of disability to the body as a whole of the claimant caused by the second injury" should not be interpreted as requiring in every case that the second injury will be considered as one extending to the body as a whole. If the second scheduled injury, standing alone, does not amount to a disability of the body as a whole, we believe a fair reading of *Mich Coal* and section 85.64 limits the liability of the employer to payment of the scheduled amount attributed to the last injury.

*Neelans,* 436 N.W.2d at 358.

As correctly noted by the district court, the clear import of *Neelans* is that where both injuries are scheduled, that is, neither is itself an injury to the body as a whole, the Fund is liable for the entire amount of the industrial disability minus the two scheduled amounts. Only where one of the injuries is to the body as a whole must there be an apportionment. No basis for reversing the district court appears.

II. The Fund's strategy before the deputy industrial commissioner was to prove through Braden's own testimony that he has not suffered disabling injuries and that, in fact, he has fabricated his claim for Second Injury Fund benefits. Indeed, counsel for the Fund set the accusatory tone early in its cross-examination of Braden when he was pointedly asked: "Do you know the meaning of the word perjury?" Counsel then attempted to impeach Braden with a series of questions designed to reveal every physical activity Braden had engaged in from the time he was first injured in 1980.

The commissioner's award shows that the Fund's attempt to impeach Braden was largely unsuccessful. The Fund now asserts on appeal that the commissioner's decision was unreasonable, arbitrary, and capricious because it (1) failed to make a specific finding concerning Braden's credibility or lack thereof, and (2) concluded that Braden suffered a sixty percent industrial disability without the support of substantial credible evidence in the record.

 There is considerable merit in the Fund's contention that the commissioner erred by failing to specifically address a central issue raised by the Fund—Braden's credibility. In fact, the Fund twice moved for a specific ruling on the issue and each time the commissioner simply refused to do so. We have held that a fact finder has the duty to weigh proffered testimony and determine its credibility. *Catalfo v. Firestone Tire and Rubber Co.,* 213 N.W.2d 506, 509 (Iowa 1973). To aid the appellate court in its review, those fact-findings should be detailed. *Erb v. Iowa State Bd. of Pub. Instruction,* 216 N.W.2d 339, 342 (Iowa 1974). The commissioner's error does not compel reversal in the present case, however, because its determination of Braden's credibility inheres in its ruling.

Industrial disability has been defined as the degree to which an injury impairs the ability of an employee to earn wages. *Simbro,* 332 N.W.2d at 887. Relevant criteria for determining industrial disability include "the extent of functional disability, along with the employee's age, education, qualification, experiences, and the injury-induced inability of the employee to engage in employment for which the employee is fitted." *Id.; Graves,* 331 N.W.2d at 117–18. An agency's findings must be upheld on appeal unless they are unsupported by substantial evidence. *Morrison v. Century Eng'g,* 434 N.W.2d 874, 876 (Iowa 1989).

In addition to medical evidence and Braden's prior record of compensable injuries, the deputy based her conclusions that Braden is sixty percent industrially disabled on the following findings of fact:

1. Claimant's work restrictions preclude him from engaging in his usual occupation as a result of his injuries.

2. Claimant has limited ability to stand, walk, climb, lift, and his knees are

stiff, sore, painful, weak and cause him to fall down.

3. Claimant is forty-five years old with a ninth-grade education and has not yet acquired his GED.

4. Claimant has been unsuccessful in his attempts to secure work and has not worked since his last injury on January 17, 1985.

5. Claimant is currently enrolled at Indian Hills Community College and is working toward employment as a parole officer.

6. Serious questions exist as to whether or not claimant has the capability of reaching his goal.

The Fund's principal quarrel with the district court's affirmance of these findings is that they are inconsistent with Job Service records certified by Braden in 1986 and 1987 which indicate his alleged willingness and ability to perform a variety of physically demanding jobs such as welding, auto body repair, garbage collection, farm labor, retail sales, and commercial painting. The record reveals that Braden regularly applied for such jobs (without success) to qualify for unemployment benefits. The deputy questioned this evidence insofar as Braden's eligibility for Job Service benefits might be concerned, but ruled that Braden "could not be faulted (under the Iowa Workers' Compensation Act) for continuing to look for work from which he has always made his living." The Fund argues strenuously that this same evidence demonstrates that Braden was in fact willing and able to perform the jobs for which he applied and that his contrary testimony before the deputy is not to be believed.

The weakness in the Fund's argument is that it completely overlooks the independent medical testimony corroborating the permanent injury to Braden's knees. On the one hand, Braden's testimony could give the impression of one who has used—and perhaps abused—the system. On the other hand, the deputy's findings are supported by evidence substantiating Braden's physical impairment and his limited employment capabilities or opportunities. The fact that inconsistent conclusions may be drawn from the evidence does not mean that one of the conclusions is unsupported by substantial evidence. *Henry*, 391 N.W.2d at 734. The district court did not err in its finding that the commissioner's award is supported by substantial evidence in the record.

III. Braden's cross-appeal challenges the district court's affirmance of the commissioner's refusal to pay statutory interest on the benefit award. The court reasoned that although section 85.30[2] allows interest on accrued workers' compensation benefits at the rate designated in Iowa Code section 535.3, no provision therefor is made in the Second Injury Compensation Act, sections 85.63–.69. Furthermore, the court held, the Fund is not in the same position as an employer to know about an injury soon after it has occurred and, under section 85.66, the Fund may not disburse funds without the written order of the commissioner.

Braden concedes that if the Second Injury Fund Act specified that no interest accrues on judgments against the Fund, then it would be a special statute that would prevail over sections 85.30 and 535.3. *See Balster v. State*, 360 N.W.2d 788, 790 (Iowa 1985) (Iowa Tort Claim Act exempting state from prejudgment interest is special statute that prevails over section 535.-3). The Second Injury Fund Act makes no provision for interest. Thus, Braden argues, the general statute must control. The Fund simply responds that the omission of an interest provision in the Second Injury Fund Act evinces the legislature's intent to spare the Fund from interest liability.

We think these statutes may be harmonized so that effect is given to both. The purpose of section 85.30 is to secure compensation to injured employees and their

2. The section provides, in pertinent part: Compensation payments shall be made each week beginning on the eleventh day after the injury ... and if not paid when due, there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3 for court judgments and decrees. Iowa Code § 85.30.

dependents at the earliest possible time. *Farmers Elevator Co. v. Manning,* 286 N.W.2d 174, 180 (Iowa 1979). Unlike ordinary workers' compensation benefits, however, the Second Injury Fund's obligation cannot be assessed until the employer's liability is fixed. *See* Iowa Code § 85.64. Consistent with this legislative scheme, disbursements from the Second Injury Fund may be paid by the state treasurer only upon the written order of the industrial commissioner. Iowa Code § 85.66. After that order is given, however, the incentive to pay underlying section 85.30 applies with equal force.

We hold that interest at the statutory rate is payable on Second Injury Fund benefits from the date of the commissioner's order which, in this case, was October 28, 1988. The district court's contrary ruling on the issue must be reversed and the case is hereby remanded for a judgment reflecting the proper interest. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.