# IN THE SUPREME COURT OF IOWA

No. 66 / 07–0006

Filed May 16, 2008

**IN RE THE MARRIAGE OF BRANDON J. POWERS
AND HEATHER R. POWERS**

Upon the Petition of
**BRANDON J. POWERS,**

      Appellant,

vs.

And Concerning
**HEATHER R. POWERS,**

      Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Appellee seeks further review of court of appeals decision reversing district court judgment placing physical care of minor children with appellee. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

John J. Wood of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellee.

**PER CURIAM.**

In this further review of a decision by the court of appeals in a dissolution-of-marriage action, we must decide which parent should be the primary caregiver of two minor children. We vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts and Proceedings.

Brandon and Heather Powers were married on August 1, 1992. Heather was seventeen years old at the time and had not yet completed high school. Brandon was twenty years of age. He was a high school graduate and was employed on a full-time basis. The relationship between Brandon and Heather was tumultuous at times, resulting in multiple separations. Brandon was convicted of domestic abuse against Heather in 1998. Brandon and Heather separated for the last time in April 2005, when Heather moved from the marital home. A petition to dissolve the marriage was filed in January 2006, and a trial was held before the district court in October 2006.

Brandon and Heather had two children during their marriage. Hayley was born in 1993, and Noah was born in 1999. Heather was the primary caregiver of the two children during the marriage, prior to the separation in April 2005. Following the separation, Brandon and Heather equally shared in the care of the children.

Brandon worked on a full-time basis throughout the marriage, while Heather generally worked on a part-time basis. Heather was employed by her mother for many years and was able to take the children to work with her. Brandon acknowledged Heather was a good mother to the children.

Much of the evidence at trial focused on the conduct and activities of the parties and the children during the separation. This evidence was

largely detrimental to the respective claims for primary care by the parties and showed the children have suffered as a result of their parents' conduct. Heather generally engaged in financially irresponsible behavior, was terminated from her employment, and renewed a relationship with a convicted drug dealer who was facing new drug-related charges. To her credit, Heather insulated the children from the relationship. Heather was also arrested for domestic abuse during the separation after she scratched Brandon during a failed attempt to take a vehicle from the garage of the marital home.

Brandon began a relationship with another woman during the separation and was not always supportive of Heather in her relationship with the children. Brandon's girlfriend eventually began to reside in the marital home, along with her three children. The relationship between Brandon and Hayley became strained, and Brandon would use vulgar language towards Hayley at times. To his credit, however, Brandon completed a parenting course during the separation and expressed an understanding of the need to support Heather in her relationship with the children and to be more understanding of the needs of the children.

At trial, Hayley expressed a strong desire to reside with Heather, and Hayley believed Noah also wanted to live with his mother. The district court found Hayley to be sincere in her testimony.

The district court awarded joint legal custody with primary physical care to Heather. Brandon was given liberal visitation of the children.

Brandon appealed. We transferred the case to the court of appeals. The court of appeals modified the decree to place physical care of the children with Brandon. We granted Heather's application for further review.

## II. Standard of Review.

Our standard of review is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). We give the district court deference as to matters of fact—especially when determinations of credibility are involved—as that court had the benefit of viewing the demeanor of the witnesses firsthand. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III. Physical Care.

The fundamental goal in determining primary physical care of children in an action for dissolution of marriage is to place the children in the care of that parent who will likely best minister to the long-range best interests of the children.[1] *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). "[T]he basic framework for determining the best interest of the child" is well established. *In re Marriage of Hansen*, 733 N.W.2d at 696.[2] Generally, stability and continuity of caregiving are important considerations.[3] *Id.* (citing *In re Marriage of Bevers*, 326 N.W.2d 896, 898 (Iowa 1982)). "Stability and continuity factors tend to

---

[1]The district court ordered joint legal custody of the two children. That determination has not been appealed. Likewise, neither party appeals the distribution of marital assets and debts. Additionally, neither party requests joint physical care. Nor does the arrangement recommend itself, considering each party has committed domestic abuse assault against the other. Accordingly, we only decide which party will have primary physical care of the two children.

[2]Iowa Code section 598.41(3) (2005) establishes a list of nonexclusive factors for determining the best interest of the child in the child custody context. "Although Iowa Code section 598.41(3) does not directly apply to physical care decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d at 696 (citing *In re Marriage of Winter*, 223 N.W.2d at 166–67). Both parties acknowledged those factors apply to the question presented here.

[3]"[P]reservation of the greatest amount of stability possible is a desirable goal" because "imposing a new physical care arrangement on the children that significantly contrasts from their past experience can be unsettling, cause serious emotional harm, and thus not be in the child's best interest." *Hansen*, 733 N.W.2d at 696–97.

favor a spouse who, prior to divorce, was primarily responsible for physical care." *Id.* (citing Iowa Code § 598.41(3)(*d*)). Additionally, " 'past caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so difficult for courts to ascertain.' " *Id.* (quoting Katharine T. Bartlett, *Child Custody in the 21st Century: How the American Law Institute Proposes to Achieve Predictability and Still Protect the Individual Child's Best Interests*, 35 Willamette L. Rev. 467, 470 (1999)). "As a result, the successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality." *Id.* at 697.

In this case, the evidence reveals Heather was the primary caregiver of the two children during the marriage.[4] The evidence, while not detailed, also reveals Heather was a good mother to the children, and the children did well under her care during the marriage.

In addition, the law gives weight to a preference expressed by a child for one parent to be the primary caregiver over the other parent, depending on the age, maturity, and strength of the preference of the child. Iowa Code § 598.41. Hayley expressed a strong, unequivocal desire to live with her mother and believed Noah felt the same. Hayley was thirteen years old at the time she expressed her preference, and the results of her standardized tests in school showed she functioned above the national average. Moreover, the district court felt her testimony was sincere. We give weight to this assessment of her credibility by the district court on appeal. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

---

[4]"Stability and continuity concepts have been refined in the recent literature and expressed in terms of an approximation rule; namely, that the caregiving of parents in the post-divorce world should be in rough proportion to that which predated the dissolution." *Id.*

Notwithstanding, we recognize, as did the court of appeals, that Heather frequently engaged in conduct, some very disturbing, that weighs against a finding that she can best minister to the interests of the children. Of course, Brandon has done the same. Yet, the conduct by both parties occurred during the period of separation and should not necessarily trump the overall parenting characteristics exhibited throughout the entire marriage. In deciding primary care, it is better to look to the totality of the circumstances of the parents and attempt to place specific events during the period of separation, or other such times, into perspective. *In re Marriage of Ihle*, 577 N.W.2d 64, 69 (Iowa Ct. App. 1984). Moreover, the deficiencies exhibited by Heather during the separation largely arose from incidences that were circumstantial in nature, while the parenting deficiencies exhibited by Brandon largely revealed a personality trait. The language Brandon directed at Hayley during arguments cannot be excused or minimized under any circumstance.

Nevertheless, the decision that must be made in this case is painfully close. It is clearly capable of two different conclusions, as shown by the contrasting decisions of the district court and the court of appeals. In the end, we give weight to the decision of the court that is in a superior position to make the decision. Iowa R. Civ. P. 6.14(6)(*g*). The district court has the distinct advantage over an appellate court to decide custody issues based on its ability to see and hear the parties and draw upon senses and perceptions that are unavailable on appeal. *Vrban*, 359 N.W.2d at 423. While the district court made no specific credibility findings regarding Brandon and Heather in its written decree, these findings are inherent in the decision made. *See Second Injury Fund v. Braden,* 459 N.W.2d 467, 471 (Iowa 1990) (finding credibility

determination to inhere in district court ruling when order contained no specific discussion of credibility).

### IV. Conclusion.

We conclude Heather should be awarded physical care of the children with liberal visitation to Brandon as described in the decree entered by the district court. We vacate the decision of the court of appeals and affirm the decision of the district court.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins, Hecht, and Appel, JJ., who dissent.

#66/07–0006, *In re Marriage of Powers*

**WIGGINS, Justice (dissenting).**

I dissent. The majority is correct when it states the goal in determining primary physical care of the children is to place the children in the care of the parent who will likely best minister to the long-range best interests of the children. *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). Although past caretaking patterns may be an indicator of future conduct, the evidence presented at trial can and should be used to overcome past caretaking in custody decisions if the evidence establishes that the parent has created a situation where the parent will be unable to best minister to the long-range best interests of the children. In other words, our primary concern is with the children's future care and well-being. The evidence in this case establishes Heather has created a situation making it unlikely she will be able to best minister to the long-range best interests of the children.

The evidence I find most convincing to deny Heather primary physical care of the children is her renewed relationship with a drug dealer previously convicted of selling drugs to minors. Just months before the dissolution trial, this individual was arrested for possession of cocaine in front of her residence. Although she denies she has introduced the children to this drug dealer and professes to have broken off her relationship with him, she continues to drive his car and use his cell phone. She remains financially, if not emotionally, dependent on this individual.

To further complicate the situation, since the separation Heather has been unable to provide a stable home life for the children. Her problems began when Heather falsified her time card to receive wages she was not entitled to receive. When her employer discovered Heather's

conduct, her employer terminated her from employment. Because of her inability to manage money, she financed the 2000 Volkswagen, a vehicle she received in the dissolution free and clear of any liens or encumbrances. She then proceeded to default on the loan payments and the vehicle was repossessed. In an attempt to manage her financial difficulties, she cashed out her 401(k) account and kept the parties' entire $4600 tax refund for herself. All this money is gone. Because Heather has not been able to manage her finances, she has had to change the residence of the children numerous times.

Heather's choice of friends and financial situation are not matters that will resolve quickly. The children are 9 and 15 years old. They need a care provider who can provide them with some stability. It is apparent Heather's poor choices are affecting the children adversely. The school has sent notes home regarding the children's lack of attendance. One child is receiving a failing grade in chorus based on this lack of attendance. This child is also failing in math. The fact that Heather has been unable able to remedy these problems does not bode well for the future.

Finally, I cannot agree with the majority that under this record credibility findings in favor of Heather are inherent in the district court decision. The district court order is devoid of any determination as to the credibility of any of the parties. Based on my review of the record, I am convinced that Heather was less than honest regarding her reason for termination from her employment and her relationship with a convicted drug dealer.

The majority cites our recent decision in *In re Marriage of Hansen,* 733 N.W.2d 683 (Iowa 2007), in support of its affirmance of the trial court. This citation is at least curious as in *Hansen,* we reversed a trial

court order based on our independent de novo review of the record. In fact, *Hansen* stands for the proposition that no individual factor, including past caretaking, is determinative on custody issues and that courts should engage in a multi-factored analysis in determining the best interest of the child.

Brandon may not have been the primary care giver during the marriage, but he understands the importance of providing a stable and nurturing home for the children. If we give Brandon primary physical custody, the children will reside in the only residence that has provided them with some stability, the marital residence. The majority's opinion awarding custody to the mother because she was the primary care taker in the past is not justified under this record. Heather's post-separation conduct is not an anomaly; it clearly establishes she has put the children's future at risk. The powerful nature of the evidence makes this one of those cases where Heather's conduct during the period of separation should trump her parenting characteristics exhibited during the marriage.

I am not willing to gamble with the children's future that Heather will turn her life around before it is too late for the children to succeed. She has had her chance and has not succeeded. I agree with the court of appeals that the evidence establishes Brandon is the parent who will likely best minister to the long-range best interests of the children. Accordingly, I would reverse the district court, affirm the court of appeals, and award physical care of the children to Brandon.

Hecht and Appel, JJ., join this dissent.

This is not a published opinion.