# In the Iowa Supreme Court

No. 25–0717

Submitted March 24, 2026—Filed April 24, 2026

**Sarah Kingsbury,**

Appellee,

vs.

**Second Injury Fund of Iowa,**

Appellant.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, judge.

The Second Injury Fund of Iowa appeals the district court order reversing the dismissal of an injured worker's claim seeking Second Injury Fund benefits. **Reversed and Case Remanded with Instructions.**

Christensen, C.J., delivered the opinion of the court, in which Mansfield, McDonald, and Oxley, JJ., joined. Waterman, J., filed a dissenting opinion, in which McDermott, J., joined. May, J., took no part in the consideration or decision of the case.

Brenna Bird, Attorney General; Eric Wessan, Solicitor General; Patrick C. Valencia, Deputy Solicitor General; Halle Kissell (argued), Assistant Solicitor General; and Meredith Cooney, Assistant Attorney General, for appellant.

Thomas A. Palmer (argued) of Lawyer, Dougherty & Palmer, PLC, West Des Moines, for appellee.

Terri C. Davis and Eric P. Martin of Shuttleworth & Ingersoll, Cedar Rapids, for amicus curiae Iowa Defense Counsel Association.

**Christensen, Chief Justice.**

We must determine whether a workers' compensation claimant may continue to pursue her claim against the Second Injury Fund of Iowa (Fund) after entering a compromise settlement with her employer that did not establish the employer's liability for the claimant's injury. Under these circumstances, the answer is no because the claimant's settlement left her unable to prove that she sustained a work-related, compensable injury for some degree of permanent disability that would trigger Fund liability. Thus, the claimant's settlement with her employer involves the same subject matter as her claim against the Fund and "constitute[s] a final bar to any further rights arising under" the Iowa Workers' Compensation Act on this matter under Iowa Code section 85.35(9) (2021).[1] We reverse the district court's ruling to the contrary and remand the case for the entry of an order affirming the commissioner's decision.

### I. Background Facts and Proceedings.

On August 13, 2021, Sarah Kingsbury sustained a work injury in the course of her employment as a pharmacy technician at Walmart, Inc. (Walmart), when she tripped and fell over a box on the work floor. Following an independent medical evaluation and a period of temporary total disability benefits, Kingsbury filed a petition for workers' compensation benefits on May 4, 2023, against Walmart and its insurer for injuries to her right lower extremity and body as a whole. On December 11, she moved to amend her petition to list the following allegedly disabled body parts: right lower extremity, right shoulder, and body as

---

[1]The legislature amended the statute to add a new subsection in 2022, which resulted in renumbering section 85.35(9) to what is now section 85.35(10). *See* 2022 Acts ch. 1128, § 3 (codified at Iowa Code § 85.35(8) (2023)). We will refer to it as Iowa Code section 85.35(10) in the rest of this opinion.

a whole. The deputy workers' compensation commissioner granted the motion, and on January 4, 2024, Walmart and its insurer filed a notice of intent to settle.

The next day, Kingsbury moved to amend her petition to include allegations against the Fund. The amendment also changed Kingsbury's allegedly disabled parts from "Right Lower Extremity, Right Shoulder and Body as a Whole" in her previous petition to "Right Lower Extremity and Right Shoulder." Additionally, Kingsbury claimed an alleged date of first loss as 2009 for Fund purposes, reporting an injury to her left lower extremity that resulted in a 7% impairment. The deputy commissioner granted this motion on January 17.

On January 24, the workers' compensation commissioner approved the settlement between Kingsbury, Walmart, and Walmart's insurer under Iowa Code section 85.35(3). The settlement stated that the "subject and nature" of the parties' dispute was "[t]he extent of [Kingsbury's] *permanent disability* she sustained as a result [of] right shoulder and right knee injuries with subsequent infection/wounds after she tripped over a box on August 13, 2021." (Emphasis added.) The settlement continued,

> Defendants have accepted compensability[] of claimant's injuries to her right shoulder and right knee and assert she suffered only a *temporary exacerbation* of her pre-existing deconditioned and osteoarthritic shoulders and knees.
>
> Claimant alleges she sustained *significant permanent disability* due to her August 13, 2021, injuries and relies on Dr. Manshadi[']s IME. Dr. Manshadi assigned a combined 36% permanent impairment to the RLE and in regard to her right shoulder, he assigned a 15% to the RUE and recommended restrictions of no repetitive reaching shoulder height or above, no lifting greater than 5 pounds and avoid ladders.
>
> In lieu of additional litigation, the parties have agreed to settle on a full and final basis.

(Emphasis added.)

Walmart agreed to pay Kingsbury $52,500 "as a full and final compromised settlement, satisfaction, and final discharge of all workers' compensation claims" against it and its insurer for "injuries including, but not limited to her right shoulder, right upper extremity, right knee, right lower extremity and any claim to the body as a whole related to the August 13, 2021, injury, or any claim of sequelae of injury of any of the same." The settlement did not establish how the parties arrived at that amount based upon Dr. Manshadi's impairment ratings.

The Fund moved for summary judgment on two grounds. First, it argued that Kingsbury could not establish a second qualifying loss to prove her entitlement to Fund benefits because she admitted in the settlement that the extent of her permanent disability from the second qualifying loss was disputed. Second, it asserted that Kingsbury could not establish the extent of Walmart's liability in a collateral action against the Fund.

The deputy granted the motion over Kingsbury's resistance, concluding that "the obligation of the Fund cannot be considered until the liability of the employer is fixed," which was not possible given Kingsbury's settlement with her employer. Kingsbury appealed to the commissioner, who affirmed the deputy's decision. She subsequently petitioned for judicial review, and the district court reversed the commissioner's decision because "Kingsbury's claims against the Second Injury Fund cannot be said to have been the subject matter of the agreement between [Kingsbury] and Walmart." We retained the Fund's timely appeal.

**II. Analysis.**

The Fund maintains that Kingsbury's settlement with Walmart precludes her claim for Fund benefits under Iowa Code section 85.35(10), which requires our interpretation of workers' compensation statutes. "Because the commission

is not vested with interpretive authority over statutes," our review of the commissioner's interpretation is for the correction of errors at law. *Delaney v. Second Inj. Fund of Iowa*, 6 N.W.3d 714, 719 (Iowa 2024); *see also* Iowa Code § 17A.19(10)(*c*) (authorizing a court's reversal of agency action that prejudices a party's substantial rights "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency"). That review starts with the statutory language at issue.

The Second Injury Compensation Act provides,

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this subchapter the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

Iowa Code § 85.64(1).

In other words, if a worker "who has previously lost, or lost the use of" a listed member or organ "becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ," the employer is liable for only the degree of permanent disability that would have existed without the prior injury. *Id. In addition to and after the payment of the employer's compensation for that degree of permanent disability*, the Fund will pay for the remainder of the permanent disability, after first deducting the compensable value of the original injury. *Id.* "Unlike ordinary workers' compensation benefits, . . . the Second Injury Fund's obligation cannot be

assessed until the employer's liability is fixed." *Second Inj. Fund of Iowa v. Braden*, 459 N.W.2d 467, 473 (Iowa 1990).

In sum, Kingsbury must prove the following three things to trigger Fund liability: (1) "she has either lost, or lost the use of a hand, arm, foot, leg, or eye"; (2) she "sustained the loss, or loss of use of another such member or organ through a work-related, compensable injury"; and (3) there is "some permanent injury from the injuries." *Delaney*, 6 N.W.3d at 717–18 (quoting *Second Inj. Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 547–48 (Iowa 1995)). Unfortunately for Kingsbury, her settlement with Walmart leaves her unable to establish a work-related, compensable injury for some degree of permanent disability. This is clear from the declared "subject and nature of the dispute" provided in the settlement, which is listed as "*the extent of the Claimant's permanent disability* she sustained as a result [of] right shoulder and right knee injuries with subsequent infection/wounds after she tripped over a box on August 13, 2021." (Emphasis added.)

> As the settlement explained,
>
> Defendants have accepted compensability[] of claimant's injuries to her right shoulder and right knee and assert she suffered only a *temporary exacerbation* of her pre-existing deconditioned and osteoarthritic shoulders and knees.
>
> Claimant alleges she sustained *significant permanent disability* due to her August 13, 2021, injuries, and relies on Dr. Manshadi[']s IME. Dr. Manshadi assigned a combined 36% permanent impairment to the [right lower extremity] and in regard to her right shoulder, he assigned a 15% to the [right upper extremity].

(Emphasis added.) Despite these conflicting arguments about the extent of Kingsbury's injury, the parties "agreed to settle on a full and final basis," and Kingsbury "release[d] and discharge[d] [Walmart] from all liability under the Iowa Workers' Compensation Law."

Under Iowa Code section 85.64(1), payment from the Fund can only come "[i]n addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer." Given Kingsbury's settlement with Walmart, she cannot meet the terms of the statute because there has not been and will not be a payment by the employer for a given degree of permanent disability.

Additionally, Iowa Code section 85.35(10) provides that a compromise settlement approved by the workers' compensation commissioner "shall constitute a final bar to any further rights arising under" the Iowa Workers' Compensation Act *regarding the subject matter of the compromise.*" (Emphasis added.) *See also Tweeten v. Tweeten*, 999 N.W.2d 270, 276 (Iowa 2023) (discussing the statutory scheme governing the settlement of workers' compensation claims). Here, the subject matter of the compromise includes whether Kingsbury suffered permanent disability as a result of the workplace injury at Walmart. Section 85.35(10) precludes Kingsbury from further litigating the extent of her permanent disability from that injury.

Ultimately, this settlement is not an admission of liability, and nothing in this settlement establishes Walmart's liability for Kingsbury's injury or the degree of related disability that Walmart would be obligated to pay for that injury if she could establish Fund liability. *See* Iowa Code § 85.35(10) ("Approval of a settlement by the workers' compensation commissioner is binding on the parties and shall not be construed as an original proceeding.") These are necessary findings that distinguish this case from *Tweeten v. Tweeten*, in which we held that a compromise settlement between the claimant and the Fund did not bar the claimant's separate claim against his employer for benefits. 999 N.W.2d at 278.

Under our workers' compensation laws, liability of the Fund is *not* a statutory prerequisite to liability of the employer, whereas liability of the employer is a statutory prerequisite to liability of the Fund. *See* Iowa Code § 85.64(1). This explains why the settlement with the Fund in *Tweeten* did not preclude the liability of the employer, but the settlement with the employer here precludes the liability of the Fund.

In *Tweeten*, the subject and nature of the disputes were separate and distinct. 999 N.W.2d at 278. The claimant's settlement with the Fund concerned whether the claimant's preexisting ankle injury from 2008 triggered Fund Liability. *Id.* In contrast, the claimant's claim against his employer was for his second and current injury. *Id.* Thus, no part of the Fund's claim affected the claim between the claimant and his employer. *See id.*

We cannot say the same here because Kingsbury's settlement with Walmart is intertwined with the benefits she is seeking from the Fund. The existence and extent of a permanent disability is necessary to determine the extent of the Fund's obligation to Kingsbury, but it remained unresolved in Kingsbury's settlement with Walmart. *See Braden*, 459 N.W.2d at 473.

Kingsbury's claim that this ruling will hinder future settlements overlooks the ability of a claimant and employer to enter settlements that would meet the requirements necessary to establish Fund liability. These range from an agreement for settlement under Iowa Code section 85.35(2) to a commutation agreement identifying the extent of the claimant's permanent disability for the work-related injury under Iowa Code section 85.45. *See also Second Inj. Fund of Iowa v. Strable*, 14 N.W.3d 742, 745 (Iowa 2024) (describing the claimant's full commutation agreement with her employer, which identified a 34% permanent disability to the injured area and entitled her to an agreed-upon amount of healing period and permanent partial disability benefits). For example, Iowa

Code section 85.35(4) authorizes parties to "enter into a settlement that is a combination of an agreement for settlement and a compromise settlement that establishes the employer's liability for part of a claim but makes a full and final disposition of other parts of a claim."[2]

A similar settlement here that established a fixed amount of partial permanent disability payments for which Walmart would be liable could have allowed Kingsbury to subsequently prove Fund liability. Instead, she agreed to a settlement in which Walmart explicitly disputed the extent of its liability for her injuries and never agreed to provide benefits for the degree of disability from the work injury. Therefore, she cannot establish Walmart's liability to pursue her claim against the Fund.

These settlement options also address the concern from Kingsbury and the amicus that this ruling undermines Iowa's public policy in favor of voluntary settlements. *See Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 269 (Iowa 2018) ("Iowa has a well-established public policy favoring the voluntary settlement of disputes."). If Kingsbury and the amicus believe that limitations on one type of settlement undermine that policy when other settlement options are still available, their cause is one for the legislature to address. *Cf. Teig v. Chavez*, 8 N.W.3d 484, 494 (Iowa 2024) ("It may be that the threat of possible disclosure of an application may deter both internal and external candidates for a government job, but that is a policy consideration best left to the legislative branch."). Notably, all parties involved here claim that their position will promote judicial economy while the opposing side's will cause inefficient litigation, and

---

[2]In addition, as we discussed at oral argument, nothing precludes the claimant from entering into a global settlement with the employer and the Fund at the same time.

the Fund also poses its own additional policy arguments.[3] But "it is not the responsibility of this court to balance the competing policy interests." *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988). That "is a quintessentially legislative function involving policy choices our constitution places with the elected branches." *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 87 (Iowa 2022).

In conclusion, Kingsbury's compromise settlement with Walmart left her unable to establish Walmart's fixed liability for her injury. This is a necessary element to trigger the Fund's obligation. Therefore, the district court should have affirmed the commissioner's summary judgment ruling dismissing Kingsbury's claim against the Fund.

**III. Conclusion.**

For the above reasons, we reverse the district court's ruling and remand this case to the district court to enter a judgment affirming the commissioner's decision.

**Reversed and Case Remanded with Instructions.**

Mansfield, McDonald, and Oxley, JJ., join this opinion. Waterman, J., files a dissenting opinion, in which McDermott, J., joins. May, J., takes no part.

---

[3]For example, the Fund argues that Walmart is in a better position than the Fund to conduct an early and full investigation of her injury. Allowing a claimant to bring an action wholly against the Fund without having established employer liability would hamper the Fund's ability to defend against a claimant's asserted second injury. It would also force the Fund to defend the employer's interests without the same access to the employer's information concerning the alleged work injury, which may be necessary to establish applicable defenses.

#25–0717, *Kingsbury v. Second Injury Fund*

**Waterman, Justice (dissenting).**

I respectfully dissent. I would affirm the district court's well-reasoned ruling that correctly interpreted Iowa Code section 85.35(9) (2021) and *Tweeten v. Tweeten*, 999 N.W.2d 270 (Iowa 2023), to determine that Sarah Kingsbury could settle her workers' compensation claim with her employer, Walmart, Inc., and still proceed with her separate claim against a different party, the Second Injury Fund of Iowa (Fund). The Fund was not a party to Kingsbury's settlement with Walmart. The Fund contributed nothing to Kingsbury's settlement and was not named as a released entity. Yet our court's decision today errs by letting the Fund off the hook.

Iowa Code section 85.35(9) provides, "Approval of a settlement by the workers' compensation commissioner is *binding on the parties* . . . . [A]n approved compromise settlement shall constitute a final bar to any further rights . . . regarding the *subject matter of the compromise* . . . ." (Emphasis added.) In *Tweeten*, we unanimously held that a claimant's settlement with the Fund did not bar his right to benefits from his employer under section 85.35(9). 999 N.W.2d at 278. We noted that the employer was not a party to that settlement. *Id.* We defined the term "subject matter of the compromise" in section 85.35(9) as "[t]he issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute." *Id.* (alteration in original) (quoting *Subject Matter*, *Black's Law Dictionary* 1723 (11th ed. 2019)). So we concluded that the "subject matter of the compromise" was limited to his claim against the Fund, not his claim against his employer. *Id.*

In my view, *Tweeten* works both ways here. The Fund was not a party to Kingsbury's settlement with Walmart. The subject matter of that settlement was

her entitlement to benefits from Walmart, not the Fund. The district court correctly ruled that *Tweeten*'s "reasoning applies to this case. Ms. Kingsbury's claims against the Second Injury Fund cannot be said to have been the subject matter of the agreement between [the] Plaintiff and Walmart."

Kingsbury cannot pursue Walmart for additional benefits, and Walmart did not agree that she suffered a permanent injury. But neither did Kingsbury agree that her injury was only temporary. Their settlement left open the issue of permanency. Kingsbury will have to prove she suffered a compensable permanent injury to a scheduled member at Walmart to recover from the Fund. *See* Iowa Code § 85.64(1). Walmart stipulated that Kingsbury suffered a compensable injury to her right shoulder and knee. Nothing in the text of section 85.64(1) prohibits Kingsbury from proving permanency in her separate claim against the Fund. And nothing in the statute requires Walmart to stipulate to permanency or lose a contested case on that issue before Kingsbury can recover from the Fund. To the extent that section 85.64(1) is ambiguous, "we liberally construe the statute in favor of the employee." *Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 850 (Iowa 2024).

The Fund cannot hide behind Walmart's settlement; the statutory bar in section 85.35(9) protects only Walmart. In my view, Walmart's settlement left Kingsbury's powder dry to pursue her separate claim against the Fund. The Fund is free to contest Kingsbury's evidence of permanency, and to obtain evidence supporting its position from Walmart and Kingsbury through discovery. The agency as factfinder would decide the permanency issue based on the medical evidence and the claimant's testimony. The Fund would not be paying any part of Walmart's liability. The Fund has not shown that it would be unfairly disadvantaged procedurally by allowing Kingsbury's claim to proceed. To the contrary, the Fund remains liable only for its statutory obligation, regardless of

whether the claimant settles with her employer first. *See Second Inj. Fund of Iowa v. Strable*, 14 N.W.3d 742, 749 (Iowa 2024) ("Nor does the fact that Strable settled with her employer affect the Fund's liability.").

It is claimants and employers and their insurers who are disadvantaged by our court's interpretation today. Going forward, claimants often will no longer be able to first settle separately with their employer without abandoning any right to recover from the Fund. As the majority opinion acknowledges, "Iowa has a strong public policy favoring settlements." *Peak v. Adams*, 799 N.W.2d 535, 539 (Iowa 2011). And "the public policy of this state encourages settlement of contested workers' compensation claims." *Bankers Standard Ins. v. Stanley*, 661 N.W.2d 178, 181 (Iowa 2003), *superseded by statute on other grounds*, 2005 Iowa Acts ch. 168, § 10 (codified at Iowa Code § 85.35 (Supp. 2005)). The legislature amended section 85.35 in 2005 to facilitate settlements by limiting the resulting bar on claims against other parties to the "subject matter of the compromise." *Tweeten*, 999 N.W.2d at 276–77 (quoting Iowa Code § 85.35(9)). That policy favoring settlements unquestionably is undermined by today's decision.

The majority opinion notes that claimants could still pursue the Fund after settling with an employer who stipulates to permanency in a commutation agreement, as in *Second Injury Fund of Iowa v. Strable*, 14 N.W.3d at 745. But settlements take two to tango. When, as here, the employer will not agree to permanency, our court now leaves claimants with a Hobson's choice: continue litigating against both the employer and Fund or abandon the claim against the Fund. Alternatively, a footnote in the majority opinion observes that claimants could agree to a "global" settlement that includes both the employer and the Fund. But such a resolution takes *three* to tango and is even less likely after today's decision. As the district court observed, "it does not make sense to

discourage parties from settling. Meaning, it would make little sense to force an employer into court simply because the Fund refuses to settle with a claimant."

I am persuaded by the advocacy of experienced practitioners that today's decision creates a significant obstacle to settlements. Kingsbury's counsel urged us to enforce the legislature's 2005 amendments that

> enabl[e] parties to have flexibility in settlement of their workers' compensation claims. Just as injured workers and the Fund need to be able to compromise their claims without automatically barring the injured workers' separate claims against employers, injured workers and employers also need to be able to compromise their claims without automatically barring the injured workers' claims against the Fund.

We were also warned by the defense bar that today's outcome will have a chilling effect on settlements. The Iowa Defense Counsel Association (IDCA) represents hundreds of Iowa employers and their workers' compensation insurers. The IDCA's amicus curiae brief aptly observed:

> The Fund's position in the present case effectively creates a penalty for a claimant entering into a compromise settlement with an employer. It creates a system in which a compromise settlement with the employer extinguishes the right to pursue a claim against the Fund while continued litigation preserves the claim. This interpretation punishes a claimant for choosing settlement with the employer over expensive and time-consuming litigation. Therefore, it effectively removes compromise settlement with the employer as an option for any claimant who wishes to pursue a claim against the Fund.

> Additionally, adopting the Fund's position would have a negative impact on settlement negotiations between a claimant and an employer. Claimants with potential Fund claims would be incentivized to reject reasonable settlement offers from their employer in order to preserve the Fund claim. If claimants are unable to accept reasonable settlement offers, the likely result will be more contested hearings, increased administrative and litigation costs, and delayed resolution of the claims.

Counsel for employers, insurers, and injured workers alike are aligned in advocating for the commonsense interpretation of section 85.35(9) that would

allow claimants to settle separately with their employers without giving up their rights against the Fund. I agree with their interpretation. Our court sided with the Fund instead. As the majority opinion emphasizes, policy arguments favoring settlements must be redirected to the legislature. That effort would be unnecessary if we affirmed the district court's correct interpretation of section 85.35(9) as urged by Kingsbury and the IDCA.

For all of these reasons, I am unable to join the majority opinion.

McDermott, J., joins this dissent.