SECOND INJURY FUND
OF IOWA, Appellant,

v.

Robert BERGESON, City Plumbing &
Heating, Inc., and Dodson Insurance
Group, Appellees.

No. 93–1567.

Supreme Court of Iowa.

Jan. 18, 1995.

544

Bonnie J. Campbell, Atty. Gen., and Robert D. Wilson, Asst. Atty. Gen., for appellant.

Dennis L. Hanssen of Hopkins & Huebner, P.C., Des Moines, for appellee employee.

Michael R. Hoffman and Steven R. Cantonwine of Michael R. Hoffman, P.C., Des Moines, for appellees employer and insurer.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and ANDREASEN, JJ.

ANDREASEN, Justice.

This is an appeal from the district court's affirmance on judicial review of the industrial commissioner's decision. The commissioner determined that the claimant suffered an industrial disability caused by the combination of his first and second injuries which triggered the liability of the Second Injury Fund of Iowa. The commissioner also ordered the Fund to reimburse the employer's insurer for the amount the insurer overpaid the employee. We affirm.

I. *Background.*

Robert Bergeson was fifty-six years old at the time of the hearing before the deputy commissioner. He is a high school graduate and has worked as a plumber during most of his adult life.

In 1959, while employed as a plumber, Bergeson injured his right knee while carrying a bathtub. As a result of the injury, he had knee surgery—lateral meniscectomy—on his knee and the meniscus, an important part of the knee joint, was removed. Bergeson returned to work as a plumber without restrictions after recovering from the injury. He testified he had completely healed and that he could do everything after the injury that he could do before the injury. He also

testified, however, that after the injury the knee was never as good as it had been before the injury. He occasionally sought medical treatment for his right knee after the 1959 injury. In 1980 an x-ray showed "severe degenerative changes manifested by spurs, sclerosis, and a moderate loss of cartilage space laterally." Dr. Grant, an orthopaedic surgeon, determined the partial permanent physical impairment to Bergeson's right leg to be ten percent.

Bergeson continued to work as a plumber until November 8, 1984 when he was injured while employed as a plumbing foreman for the family business. He was injured when a ditch caved in covering him with dirt up to his chest. The most serious injury was a shattered left leg femur bone. It is undisputed that Bergeson suffered a permanent left leg impairment from the 1984 injury. At the hearing, five years after the ditch cave in, Bergeson testified his left leg is shorter; therefore the balance that he had before the accident was lost. His foot has rotated sixteen degrees out so that when he walks, he walks on the edge of his foot. Because of his balancing problem, it is difficult for him to walk on uneven surfaces, to carry weights, to use a ladder, and to install pipe in a ditch. Two doctors gave impairment ratings of Bergeson's left leg. One estimated the impairment at twenty-three percent, the other at thirty-six percent.

Bergeson was unable to return to work as a plumber after the accident. On July 4, 1985 he began working part-time as a plumbing inspector for the city of Ames. The position became full time in November 1985.

The deputy found that Bergeson suffered a ten percent permanent partial impairment of the right leg from the 1959 injury and that the 1984 ditch cave in resulted in a work related second injury resulting in twenty-six percent permanent partial impairment of the left leg. Based on the combined effect of the two scheduled injuries to Bergeson's legs, the deputy commissioner concluded Bergeson suffered a forty percent industrial disability. The deputy commissioner determined that the employer was responsible for 57.2 weeks of permanent partial disability benefits from the second injury, the impair-

ment value of the first injury was 22 weeks, and the Fund was liable to Bergeson for 120.8 weeks of permanent partial disability benefits. The deputy commissioner also found that the employer's insurance carrier had overpaid Bergeson by 12.8 weeks of compensation and ordered the Fund to reimburse the carrier for the amount it overpaid. The payment ordered was to come out of the Fund's liability to Bergeson and therefore did not add any to the Fund's total liability nor did it give any windfall benefits to Bergeson.

The Fund appealed to the commissioner who adopted the deputy's decision as final agency action. The Fund sought judicial review of the commissioner's decision in district court, which affirmed the commissioner. The Fund now appeals, claiming there is insufficient evidence to support the commissioner's decision and that there is no statutory authority to award Fund benefits to the employer's insurance carrier.

## II. *Scope of Review.*

■ We review decisions of the industrial commissioner under Iowa Code chapter 17A. *See* Iowa Code § 86.26 (1993). Our review of the commissioner's decision is for error at law, not de novo. *Second Injury Fund v. Braden,* 459 N.W.2d 467, 468 (Iowa 1990). We broadly and liberally construe the commissioner's findings to uphold, rather than defeat the commissioner's decision. *Second Injury Fund v. Hodgins,* 461 N.W.2d 454, 456 (Iowa 1990). We must examine whether the commissioner's conclusions are supported by substantial evidence in the record made before the agency when the record is viewed as a whole. Iowa Code § 17A.19(8)(f). Evidence is substantial "if a reasonable mind would find it adequate to reach a conclusion. An agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence." *Second Injury Fund v. Shank,* 516 N.W.2d 808, 812 (Iowa 1994). In reviewing the commissioner's interpretation of the statutes governing the agency, we defer to the expertise of the agency, but reserve for ourselves the final interpretation of the law. *Braden,* 459 N.W.2d at 468.

III. *Disability Benefits.*

 There are two ways to evaluate permanent disability under Iowa's workers' compensation scheme. A functional disability involves determining the impairment of the employee's bodily function and is limited to the loss of the physiological capacity of the injured body or body part. *Shank*, 516 N.W.2d at 813. An industrial disability "goes beyond bodily impairment and measures the extent to which the injury impairs the employee's earning capacity." *Id.* A functional disability is one factor in determining industrial disability, but other factors including the employee's age, education, qualifications, experience, and the ability of the employee to engage in employment for which the employee is fit. *Id.*

 Permanent partial disabilities are divided into scheduled and unscheduled losses under chapter 85. *See* Iowa Code § 85.34. If an injury is one of the specific losses listed in section 85.34(2)(a)–(t), it is a scheduled injury and is compensated on the basis of the number of weeks provided for that particular injury by statute. The compensation allowed for a scheduled injury "is definitely fixed according to the loss of use of the particular member." *Graves v. Eagle Iron Works*, 331 N.W.2d 116, 118 (Iowa 1983) (quoting *Dailey v. Pooley Lumber Co.*, 233 Iowa 758, 760, 10 N.W.2d 569, 571 (1943)). If the injury is not one of the listed losses, it is treated as a "body as a whole" injury and compensated "during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole." Iowa Code § 85.34(2)(u). The result of this scheme is that an individual suffering an unscheduled injury often receives more benefits than an individual who suffers a scheduled injury, even if they are similarly affected in their ability to work. *See Gilleland v. Armstrong Rubber Co.*, 524 N.W.2d 404, 407 (Iowa 1994). Functional disability is used to determine a specific scheduled disability; industrial disability is used to determine an unscheduled injury. *Shank*, 516 N.W.2d at 813 (citing *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 15 (Iowa 1993)).

IV. *Second Injury Fund Liability.*

The Fund argues there is not substantial evidence to support the commissioner's findings either that Bergeson suffered a loss of use of his right leg or that the two injuries combined to create an industrial disability. The Fund argues that the only disability Bergeson currently suffers stems solely from the 1984 injury to his left leg, which is a scheduled injury. The Fund asserts that Bergeson is attempting to turn a scheduled injury to his left leg into an unscheduled injury by claiming benefits from the Fund and thus averting what some perceive as an unfair distinction between scheduled and unscheduled injuries. *See Gilleland*, 524 N.W.2d 404, 408 (Iowa 1994) (Lavorato, J., concurring specially).

 The Second Injury Compensation Act is codified at Iowa Code sections 85.63 through 85.69. The Fund's purpose is to encourage the employment of disabled individuals. *Aluminum Co. of Am. v. Quinones*, 522 N.W.2d 63, 65 (Iowa 1994). Section 84.64 limits the liability of the employer in the event an employee suffers a specified second injury. The statute provides in part:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no pre-existing disability. In addition to such compensation, and after the expiration of the full period provided by law for payments thereof by the employer, the employee shall be paid out of the "*Second Injury Fund*" created by this division the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

Iowa Code § 85.64. The employee must prove three things to trigger the liability of the Fund. First, that he or she has either lost, or lost the use of a hand, arm, foot, leg, or eye. Second, the employee sustained the

loss, or loss of use of another such member or organ through a work-related, compensable injury. Third, there must be some permanent injury from the injuries. *Shank,* 516 N.W.2d at 812. The prior loss does not have to be total. *Id.* at 813; *Braden,* 459 N.W.2d at 469.

### A. Loss of Use of Right Leg.

■ The Fund asserts that because the injury to Bergeson's right knee did not affect his ability to work or to do the things he did before the injury, he suffered no "loss of use" of his right leg. Bergeson's treating physician found a partial permanent physical impairment of the right knee of ten percent based primarily upon the surgical removal of a meniscus. This ten percent rating was supported by the guides to the evaluations of permanent impairment published by the American Medical Association. Iowa has adopted the guides for the determination of permanent partial disability. 343 Iowa Admin.Code 2.4(85) (1993). No medical evidence or testimony rebutted the physician's estimate.

■ To invoke Fund liability, the first injury need only be a scheduled injury. *See Braden,* 459 N.W.2d at 470. Because a scheduled injury is evaluated by determining the loss of physiological capacity of the body part, not by evaluating the impairment of earning capacity, the first injury does not have to result in an industrial disability to constitute a "loss of use" under section 85.64. The injury to Bergeson's right knee resulted in a scheduled injury to his right leg. There is substantial evidence to support the commissioner's finding that Bergeson suffered a ten percent loss of use of his right leg from the first injury.

### B. Combination of First and Second Injuries.

■ The Fund argues its liability can only be invoked when the first and second injuries somehow combine, making the impairment from the second injury greater than it would have been if there had not been a first injury. There are two ways a claimant can suffer an industrial disability. One way is to sustain an unscheduled injury that affects the body as a whole; the second way to sustain an industrial injury is from the "cumulative effects" of two scheduled injuries. *See Braden,* 459 N.W.2d at 470. We have held that "it is the *cumulative* effect of scheduled injuries resulting in industrial disability to the body as a whole—rather than the injuries considered in isolation—that triggers the Fund's proportional liability." *Shank,* 516 N.W.2d at 813 (quoting *Braden,* 459 N.W.2d at 470).

Here, Bergeson suffered two scheduled injuries, a ten percent permanent partial impairment to the right leg and a twenty-six percent permanent partial impairment to the left leg. Had he only suffered the second injury, he would have been entitled only to compensation for the scheduled injury.

■ In our review of the commissioner's award, we must construe section 84.64. When construing workers' compensation statutes, our policy is to liberally construe the statutes in favor of the worker. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983). Under the statute, a second scheduled injury to a hand, arm, foot, leg or eye, invokes the Fund's liability. The Fund is, however, only liable if the injuries result in an industrial disability to the body as a whole. *See Shank,* 516 N.W.2d at 814; *Braden,* 459 N.W.2d at 470.

Here, Bergeson suffered two scheduled injuries to his legs that resulted in an industrial disability. After the second injury he was no longer able to work as a plumber, the occupation he had held for practically all of his adult life. Although he was able to obtain employment in a related field, his earning capacity was impaired. There is substantial evidence to support the deputy's finding that he suffered a forty percent industrial disability. Because Bergeson had an industrial disability after suffering a second scheduled injury, the Fund is liable for the additional benefit amount.

### V. Reimbursement Order.

The commissioner ordered the Fund to reimburse the carrier for its overpayment of benefits to Bergeson and provided that the Fund be given a credit for the reimburse-

ment amount against the amount the Fund owes Bergeson. The Fund urges the commissioner has no statutory authority to order reimbursement of an employer or its carrier. It claims the industrial commissioner's authority is limited to determining the amount the injured employee shall be paid weekly, the number of weeks of compensation which shall be paid by the employer, and the date upon which payments out of the Fund shall begin as provided by Iowa Code section 85.67.

The commissioner relied upon Iowa Code section 85.21 as its authority to order reimbursement. This section provides in part:

> When liability is finally determined by the industrial commissioner, the commissioner shall order the carriers or employers liable to the employee ... to reimburse the carriers or employers which are not liable but were required to pay benefits.

Here, both the employer and the Fund were ordered to compensate Bergeson for his second injury. The proportion between the obligation of the employer and the Fund could not be determined until a hearing was held and a decision rendered. Voluntary payments made by the employer's carrier during the pendency of the proceedings were in excess of the employer's ultimate liability.

■ We conclude the commissioner has authority to order the Fund, as a party in an arbitration proceeding, to reimburse another party when the commissioner makes a finding that the employer or its insurer paid the employee benefits that are determined to be the responsibility of the Fund. The statutory authority given to the commissioner under section 85.67 must be construed with section 85.21 and the other provisions of chapter 85.

■ By recognizing the commissioner's authority to order reimbursement we further the beneficial purpose of encouraging the voluntary payment of benefits to the employee while the case is pending. Such an interpretation also supports the intent to reimburse employers and insurers and to avoid double recovery expressed in section 85.22. We give deference to an interpretation by the industrial commissioner when construing workers' compensation statutes. *Beier Glass*

*Co.*, 329 N.W.2d at 283. Although we recognize the Fund was established to provide additional benefits to the employee who suffers a second injury, the order of reimbursement entered by the commissioner did not reduce the benefit to the employee. We agree with the commissioner that under the facts of this case, the Fund was one of multiple parties potentially responsible to Bergeson for compensation of his disability. Section 85.21 gives the commissioner authority to order reimbursement where one party makes voluntary payment that ultimately the commissioner determines should have been paid by another party.

**AFFIRMED.**