# IN THE SUPREME COURT OF IOWA

No. 58 / 05-1957

Filed August 10, 2007

**SECOND INJURY FUND OF IOWA,**

Appellant,

vs.

**JACKIE GEORGE,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas J. Staskal, Judge.

The Second Injury Fund requests further review from a court of appeals decision affirming its liability. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Thomas J. Miller, Attorney General, and Shirley A. Steffe, Assistant Attorney General, for appellant.

Corey J.L. Walker of Walker & Billingsley, Newton, for appellee.

**WIGGINS, Justice.**

On further review the Second Injury Fund asks us to decide whether a prior injury to a left leg qualifies as a first loss under Iowa Code section 85.64 (1999). The Fund also asks us to decide whether a bilateral injury will qualify as a second loss under section 85.64. Because the claimant's injury to her left leg in May 1996 qualifies as first loss under section 85.64, and the claimant's injury to her right leg in a subsequent bilateral injury qualifies as a second loss under section 85.64, we agree with the decision of the workers' compensation commissioner that Fund liability is involved.

## I. Background Facts and Proceedings.

The facts relevant to this further review proceeding are as follows. On December 12, 2001, Jackie George filed a petition against her employer, Xerox Company, and its insurance carrier claiming she was entitled to benefits due to leg and knee injuries sustained in both her legs. George claimed these injuries occurred on June 21, 2000, while she was employed at Xerox repairing copy machines as an associate customer service engineer. Within this petition George also made a claim against the Second Injury Fund. George claimed she could receive benefits from the Fund because of three prior injuries.

Before the hearing George voluntarily dismissed her employer and its insurance company without prejudice, leaving only the Fund as the defendant to the action. At the hearing George testified she had not entered into any settlement agreement with Xerox. However, after the hearing the Fund provided the deputy commissioner with documentation detailing Xerox's settlement with George. The deputy commissioner took official notice of the settlement. The settlement demonstrates Xerox made twenty

weeks of payments to George for a four percent permanent partial disability due to her June 21, 2000, bilateral lower extremity impairment.

Also before the hearing George and the Fund stipulated an employer/employee relationship existed between George and Xerox at the time of her bilateral injury, and George did sustain an injury on June 21, 2000, arising out of and in the course of her employment with Xerox.

At the hearing George testified about a previous injury. She testified that on May 3, 1996, while working for Xerox, she tore her left meniscus and pinched a nerve in the groin of her left leg. A doctor performed a left knee scope with partial medial meniscectomy and medial femoral chondral shaving. After her surgery the doctor placed George on light-duty work, restricting her ability to squat. The doctor's notes indicate three months after the surgery George progressed enough for her to return to full-time work. However, the doctor noted George continued to have meralgia paresthetica—numbness in the lateral aspect of her thigh. Without considering the meralgia paresthetica, George's doctor gave her a four percent impairment rating to the lower extremity. George then obtained an additional impairment rating of three percent from another doctor for a total impairment of seven percent to her left leg. George provided documentation from the workers' compensation commissioner that due to the May 3, 1996, injury she was paid permanent partial disability for a seven percent impairment to her left knee.

Concerning her June 21, 2000, injury George testified she sustained a bilateral knee injury when she knelt in front of a copy machine to begin a repair. George saw her family doctor that day. She later saw an orthopedic surgeon who immediately placed her on restricted light-duty work. On August 18 the orthopedic surgeon performed arthoscopic surgery on her left

knee. Six weeks after the left knee arthoscopic surgery the doctor performed the identical procedure on George's right knee. George reported that neither surgery helped her symptoms and she continued to have "constant pain in [her] knees." George testified her knees were worse after the surgeries than before.

George was diagnosed with patella malacia femoral. The orthopedic surgeon suggested a total knee replacement; however, the other consulting physicians disagreed. A more experimental procedure was also suggested by the orthopedic surgeon, and likewise not endorsed by any of the other physicians. At the time of the hearing no further medical care was scheduled for George's knees. George testified she took Advil for pain, but at that time was under no other type of treatment for her knees.

After her 2000 bilateral knee injury and subsequent treatment, George's physicians placed permanent restrictions on her movement. They recommended no lifting over thirty pounds, no kneeling, no squatting, no stairs, and no ladders. One physician recommended sedentary work only.

The consulting physicians gave George impairment ratings for her bilateral injury. George was given a five percent impairment rating of the lower extremity, applied to each of her knees by one physician. Another physician gave George a two percent whole body impairment rating for each knee. A third physician found George suffered from a five percent impairment of each of the lower extremities, translating to a two percent impairment of the whole body for each knee. This doctor also found George suffered an additional two percent impairment due to her pain levels.

Taking all the above facts into consideration, the workers' compensation commissioner found the May 3, 1996, left knee injury qualified as a first loss under section 85.64. The commissioner also held

the bilateral nature of the second injury did not disqualify the second injury as a second loss under section 85.64 because "[i]n the present injury [George]'s right leg was also damaged and constitutes a qualifying loss."

The Fund sought judicial review of the commissioner's decision and a stay of the enforcement of agency action. The district court stayed enforcement of the commissioner's decision pending its judicial review. On judicial review, the district court concluded substantial evidence supported the agency determination that the May 1996 injury was a qualifying first loss. Additionally, the court agreed the bilateral injury qualified as a second loss under section 85.64. In reaching this conclusion the district court used a different analysis of section 85.64 than that of the commissioner. In other words, the court affirmed the decision of the commissioner for different reasons than those used by the commissioner.

The Fund appealed. At the Fund's request the district court stayed enforcement of its decision without bond pending the Fund's appeal to our court. George cross-appealed the stay. We transferred the appeals to the court of appeals. The court of appeals affirmed the district court's judicial review determination on the same grounds as the district court. The court of appeals also affirmed the stay order. The Fund sought further review.

**II. Issues.**

In its application for further review the Fund claims the commissioner erred in concluding George's May 1996 injury was a qualifying first loss under section 85.64. The Fund also claims the commissioner erred in determining that a bilateral injury will not disqualify the second injury as a second loss under section 85.64.

In our discretion we can review any issue raised on appeal regardless of whether a party seeks further review of that issue. *In re Marriage of*

*Ricklefs*, 726 N.W.2d 359, 361-62 (Iowa 2007). George did not request further review of the court of appeals' decision regarding the stay. Accordingly, we find it unnecessary to address the stay issue because on remand we are ordering the district court to lift the stay and enforce the commissioner's decision.

### III. Scope of Review.

When a district court reviews agency action, it must do so pursuant to the Iowa Administrative Procedure Act. *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001). This court reviews a district court's judicial review of agency action "to determine if we would reach the same result as the district court in our application of the Act." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007).

This court may reverse, modify, affirm, or remand to the agency for further proceedings if the agency's action is erroneous under a ground specified in the Act and a party's substantial rights have been prejudiced. Iowa Code § 17A.19(10). This court "broadly and liberally construe[s] the commissioner's findings to uphold, rather than defeat the commissioner's decision." *Second Injury Fund v. Bergeson*, 526 N.W.2d 543, 546 (Iowa 1995). Evidence should not be considered "insubstantial merely because the court may draw different conclusions from the record." *Arndt*, 728 N.W.2d at 393.

### IV. Analysis.

*A. The Second Injury Fund.* The legislature established the Fund in order to encourage the employment of disabled persons "by making the current employer responsible only for the disability the current employer causes." *Second Injury Fund v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994).

The Second Injury Compensation Act is found at Iowa Code sections 85.63 through 85.69.  Section 85.64 outlines the liability of the Fund.  It states:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no pre-existing disability.  In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the *"Second Injury Fund"* created by this division the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

> Any benefits received by any such employee, or to which the employee may be entitled, by reason of such increased disability from any state or federal fund or agency, to which said employee has not directly contributed, shall be regarded as a credit to any award made against said second injury fund as aforesaid.

Iowa Code § 85.64.

In order for George to prove section 85.64 is applicable to her loss, she must establish:

> (1) she has either lost, or lost the use of a hand, arm, foot, leg, or eye;

> (2) she sustained the loss, or loss of use of another such member or organ through a work related—that is, compensable—injury; and

> (3) there is some permanent disability from the injuries.

*Shank,* 516 N.W.2d at 812-13 (citing *Anderson v. Second Injury Fund,* 262 N.W.2d 789, 790 (Iowa 1978)).

*B. Whether George's May 1996 injury was a qualifying first loss under section 85.64.* To qualify as a first loss for purposes of section 85.64, the first loss does not need to be work-related. *Shank*, 516 N.W.2d at 812. Additionally, the first loss need not be a total loss or loss of use. *Irish v. McCreary Saw Mill*, 175 N.W.2d 364, 368 (Iowa 1970). In 1990 the Fund again asked this court to hold that the first loss must be "at minimum, 'a substantial loss that acts as a handicap to one's employability.' " *Second Injury Fund v. Braden*, 459 N.W.2d 467, 469 (Iowa 1990). In *Braden* we decided not to retreat from our prior position and held that a scheduled injury under section 85.34(2) affecting a hand, arm, foot, leg, or eye is a qualifying first loss. *Id.* at 469-70. The reason for allowing a scheduled injury affecting a hand, arm, foot, leg, or eye to be a qualifying first loss is because a scheduled injury evaluates an injured person's permanent partial disability by determining the loss of physiological capacity of the affected body part. *Bergeson*, 526 N.W.2d at 547. We see no reason to retreat from our long-standing law that a scheduled injury under section 85.34(2) affecting a hand, arm, foot, leg, or eye is a qualifying loss.

The record clearly establishes the May 1996 injury to George's left leg was a scheduled injury. The doctor rated it as a scheduled injury and the employer paid it as a scheduled injury. Accordingly, the commissioner was correct in holding the injury to the left leg qualified as a first loss under section 85.64.

*C. Whether a bilateral injury will qualify as a second loss under section 85.64.* In his decision, the commissioner held that the bilateral nature of a second injury will not disqualify the claimant from recovery under section 85.64. To decide this issue we must interpret the phrase "which has resulted in the loss of or loss of use of another such member or organ"

contained in section 85.64. The legislature did not vest discretion with the agency to interpret this section. Accordingly, we must determine if we will defer to the agency's interpretation pursuant to section 17A.19(11)(*b*). If a statute is clear, detailed, does not need special expertise for adequate comprehension, and is not highly technical, we will not defer to the agency's interpretation of a statute. *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 510-11 (Iowa 2003). "Our goal in interpreting the workers' compensation act 'is to determine and effectuate the intent of the legislature.'" *United Fire & Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 677 N.W.2d 755, 759 (Iowa 2004) (citation omitted). We accomplish this goal by looking to the language the legislature has chosen. *Id.* We also place "a reasonable or liberal construction which will best effect, rather than defeat, the legislature's purpose." *Id.*

A plain reading of the statute requires us to interpret the phrase "which has resulted in the loss of or loss of use of another such member or organ" to mean a loss to another such member regardless if the second loss includes other injuries. This interpretation furthers the statute's legislative intent by imposing liability on the current employer only for the degree of disability caused by the current loss, and if the employee has previously been disabled, shifting the remaining liability for any remaining compensable disability to the Second Injury Fund. Consequently, we agree with the commissioner's decision, but disagree with the district court and court of appeals analysis. We hold the bilateral nature of a second injury will not disqualify the claimant from recovery under section 85.64.

**V. Disposition.**

Because the claimant's loss in May 1996 qualifies as first loss under section 85.64 and we agree with the commissioner's decision holding the

bilateral nature of a second injury will not disqualify the second injury as a second loss under section 85.64, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court. On remand the district court should enter a judgment affirming the decision of the commissioner on the grounds used by the commissioner to reach his decision, lift its stay of the agency action, and enter judgment for George on the workers' compensation commissioner's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**