**IN THE COURT OF APPEALS OF IOWA**

No. 17-0867
Filed June 6, 2018

**RONALD L. GINTHER,**
     Plaintiff-Appellant,

**vs.**

**SECOND INJURY FUND,**
     Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        Ronald Ginther appeals the district court's ruling on judicial review affirming the decision of the Iowa Workers' Compensation Commissioner denying his claim for benefits from the Second Injury Fund of Iowa.  **AFFIRMED.**


        Thomas M. Wertz, Daniel J. Anderson, and Shannon M. Powers (until withdrawal) of Wertz, Dake & Anderson, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, and Sarah C. Brandt, Assistant Attorney General, for appellee.


        Heard by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Ronald Ginther appeals the district court's ruling on judicial review affirming the decision of the Iowa Workers' Compensation Commissioner denying his claim for benefits from the Second Injury Fund of Iowa (Fund). He asserts (1) the district court erred in finding the agency's determination that a rating to the body as whole on the basis of pain could not constitute a first-qualifying injury is a factual issue rather than a misinterpretation of Iowa law; (2) the commissioner interpreted Iowa law pertaining to first-qualifying injuries for second-injury-fund purposes; and (3) the district court erred in finding the commissioner did not abuse his discretion in determining Ginther did not suffer a first loss as a result of his 1996 right foot injury. We affirm.

### I. Background Facts and Proceedings.

Ronald Ginther was born in 1949, and he began working for Iltens in 1987, where he delivered, installed, and serviced appliances. In June 1996, Ginther went to the doctor after he experienced some pain in his heel and strain in the arch of his right foot. He explained he had been having some pain since approximately April 1996, and he reported that pain was particularly noticeable after he "jumped off [the] truck hard and landed on [his right] foot" in May 1996. Ginther was diagnosed with plantar fasciitis and was directed to participate in physical therapy and to wear an arch support. After participating in eight physical-therapy sessions without any change to his overall status, physical therapy was discontinued. Ginther was "going to give this condition a few weeks and see what happen[ed]." He did not seek further treatment for his foot thereafter.

In late 2011, Ginther injured his left knee when he "twisted his leg and felt a pop and pain in his left medial knee region" while "moving a 380-pound refrigerator." He saw a doctor a few days later, and, after an MRI scan, it was determined he had a tear in his medial meniscus. He was referred to orthopedics and pursued arthroscopic debridement. After the surgery, Ginther continued to have significant difficulty with the range of motion and pain in his knee. Physical therapy was recommended, and he completed fifteen weeks of physical therapy. Finding there had been no improvement thereafter, Ginther's orthopedist opined Ginther was at maximum medical improvement (MMI). Ginther was then referred for a functional capacity evaluation. In addition to his knee injury, Ginther's right shoulder was found to have limited range of motion. However, Ginther's right foot was reported to have normal range of motion.

Ginther was seen by Dr. Mysnyk for a second opinion. Dr. Mysnyk ultimately found Ginther was at MMI, and the doctor believed Ginther's orthopedist was best suited to determine Ginther's impairment rating. Using impairment guidelines, Ginther's orthopedist opined Ginther had a 12% lower extremity impairment and a 5% whole person impairment.

An independent medical examination was performed by Dr. Sassman. Concerning his foot injury, Ginther reported to Dr. Sassman that he continued to have foot pain over the years, requiring him to always wear shoes and inserts. Following the examination, Dr. Sassman opined Ginther had a total lower-extremity impairment rating of 19%, with a whole-person impairment of 8%. Additionally, concerning Ginther's right foot, Dr. Sassman opined: "For the right plantar fasciitis, no ratable impairment exists. However, given the symptoms that

[Ginther] is describing, I would recommend assigning 3% whole person impairment for pain." Dr. Sassman described Ginther's foot condition:

> Plantar fasciitis involves pain and inflammation of a thick band of tissue that runs across the bottom of the foot called the plantar fascia. This tissue connects the heel to the toes. Plantar fasciitis is one of the most common causes of heel pain. Under normal circumstances the fascia acts as a shock absorbing material. Risk factors for development of this issue however include age (most common between the ages of 40 and 60), certain types of exercise, including exercise that puts a lot of stress on the heel and attached tissue, such as long·distance running. Faulty foot mechanics also can cause this to develop. In addition, obesity, occupations where the person has to spend a lot of time on their feet and improper shoes can cause this issue to develop as well.
>
> Plantar fasciitis is typically treated with medications such as nonsteroidal anti-inflammatory medications. Physical therapy, splints and orthotics are also beneficial. In addition, surgical treatment is also an option.
>
> This type of problem certainly can affect one's ability to work, especially if their job entails spending a lot of time standing or walking.

Ultimately, Ginther filed a worker's compensation claim based upon his knee injury; he also filed a claim against the Fund for his right-foot injury of plantar fasciitis. Ginther entered into a settlement agreement with his employer and its insurance carrier, and the Fund claim proceeded to arbitration. A hearing on Ginther's claim was held, and Ginther testified he had not had his foot treated since 1996, but he also believed that, because there was nothing they could do for his foot then, there was nothing to be done for his foot now.

Following the hearing, the deputy workers' compensation commissioner entered his arbitration decision finding Ginther "failed to carry his burden of proof he has a qualifying injury for purposes of Fund benefits." The deputy found Dr. Sassman's opinion that Ginther had a three percent whole-person rating for pain unconvincing, noting the doctor's report did not explain how that figure was

determined. But even considering Dr. Sassman's opinion, the deputy noted the impairment rating was to the body as a whole, which the deputy stated did not qualify for Fund benefits, citing *Second Injury Fund of Iowa v. Nelson*, 544 N.W.2d 258, 264 (Iowa 1995).

Ginther appealed the arbitration decision to the Workers' Compensation Commissioner, who affirmed the arbitration decision in its entirety. Ginther requested a rehearing, which the commissioner subsequently denied. Ginther then sought judicial review, and the district court affirmed the commissioner's decision and denied Ginther's petition for judicial review. Ginther now appeals.

## II. Standard of Review.

An appeal of a workers' compensation decision is reviewed under standards described in chapter 17A, *see* Iowa Code § 85.26 (2015), which vary "depending on the type of error allegedly committed by the commissioner." *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Specifically:

> If the error is one of fact, we must determine if the commissioner's findings are supported by substantial evidence. If the error is one of interpretation of law, we will determine whether the commissioner's interpretation is erroneous and substitute our judgment for that of the commissioner. If, however, the claimed error lies in the commissioner's application of the law to the facts, we will disturb the commissioner's decision if it is "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact." Because of the widely varying standards of review, it is "essential for counsel to search for and pinpoint the precise claim of error on appeal."

*Id.* (citations omitted).

## III. Discussion.

On appeal, Ginther asserts (1) the district court erred in finding the agency's determination that a rating to the body as whole on the basis of pain could not

constitute a first-qualifying injury is a factual issue rather than a misinterpretation of Iowa law; (2) the commissioner interpreted Iowa law pertaining to first-qualifying injuries for Fund purposes; and (3) the district court erred in finding the commissioner did not abuse his discretion in determining Ginther did not suffer a first loss as a result of his 1996 right foot injury. We address his arguments in turn.

### A. *The Fund: Issue of Fact or Law.*

Chapter 85 of the Iowa Code "governs workers' compensation and contains the Second Injury Compensation Act. An award from the [Fund] is supplemental to workers' compensation benefits and is designed to provide an employee with additional compensation when disability is caused by two successive qualifying injuries." *Shine v. Iowa Dep't of Human Servs.*, 592 N.W.2d 684, 687 (Iowa 1999) (citation omitted). "The legislature established the Fund in order to encourage the employment of disabled persons 'by making the current employer responsible only for the disability the current employer causes.'" *Second Injury Fund of Iowa v. George*, 737 N.W.2d 141, 146 (Iowa 2007) (citation omitted). To that end, section 85.64(1) provides:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the [Fund] . . . the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

This section has been distilled into three elements a claimant must establish to prove he or she is entitled to benefits under the section. *See Gregory v. Second Injury Fund of Iowa*, 777 N.W.2d 395, 398 (Iowa 2010). First, a claimant must show a permanent disability to a hand, arm, foot, leg, or eye was sustained—a first-qualifying injury. *See id.* Second, the claimant must show a permanent disability to another such member through a work-related injury was subsequently sustained—a second qualifying injury. *See id.* at 398-99. Third, the claimant must show "the permanent disability resulting from the first and second injuries exceeds the compensable value of 'the previously lost member.'" *Id.* at 399.

There is no dispute that Ginther's 2011 knee injury qualified as a work-related, compensable injury. The fighting issue is whether Ginther suffered a first-qualifying injury. As an initial matter, Ginther argues whether he suffered a first-qualifying injury is not an issue of fact but rather one of law, which involves a less-deferential standard of review. However, both issues of fact and law are involved; to establish entitlement to fund benefits under section 85.64(1), the employee must first show he or she "previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye." *See also Gregory*, 777 N.W.2d at 398. This first injury "does not have to result in an industrial disability to constitute a 'loss of use' under section 85.64." *Second Injury Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 548 (Iowa 1995). Rather, it need only be a scheduled injury, which "is evaluated by determining the loss of physiological capacity of the body part, not by evaluating the impairment of earning capacity." *Id.* Scheduled injuries are specifically enumerated "in section 85.34(2)(a)-(t)" with the "number of weeks a worker must be compensated for loss of designated body parts." *Second Injury Fund of Iowa*

*v. Braden*, 459 N.W.2d 467, 470 (Iowa 1990). In the end, *that* Ginther must show he "previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye," as described within case law is a legal issue; *whether* Ginther showed he "previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye" is a fact question.

Here, Dr. Sassman did not find Ginther had lost, or lost the use of, his right foot. Ginther seems to argue Dr. Sassman's opinion that a "3% whole person impairment for pain" for the foot symptoms he described evidences he suffered a foot injury. While that may be factually true, that does not establish he "previously lost, or lost the use of," his right foot within the meaning of section 85.64(1). Clearly, the record does not show Ginther "previously lost, or lost the use of," his right foot to establish a first qualifying injury.

### B. *Misinterpretation of Law Concerning Injury to Body as a Whole.*

Ginther goes on to argue that the commissioner erred when he concluded that, even if Dr. Sassman's opinion was considered, the doctor's opinion concerned an injury to the body as a whole, which does not qualify as a first injury. He asserts that Dr. Sassman's opinion directly relates to Ginther's foot injury, and he again argues this shows he established a first-qualifying injury. But for the same reasons stated above, the opinion does not evidence that Ginther "previously lost, or lost the use of," his right foot within the meaning of section 85.64(1).

### C. *Abuse of Discretion.*

Finally, Ginther contends the commissioner's decision was irrational, illogical, and wholly unjustifiable when he found "Ginther failed to establish a first-qualifying injury when the only medical evidence establishes permanent

impairment suffered by Ginther due to plantar fasciitis to his right foot in 1996."
Even assuming without deciding the medical evidence established Ginther suffered a permanent impairment due to plantar fasciitis to his right foot in 1996 as alleged, this is insufficient to establish a first-qualifying injury within the meaning of section 85.64(1). Here, there was no evidence that Ginther "previously lost, or lost the use of," his right foot within the meaning of section 85.64(1).

### IV. Conclusion.

Upon our review, Ginther did not show he suffered a first-qualifying injury within the meaning of section 85.64(1). We affirm the district court's ruling affirming the agency's decision and denying Ginther's petition for judicial review.

**AFFIRMED.**