# In the Iowa Supreme Court

No. 24–0056

Submitted November 13, 2024—Filed December 13, 2024

**Second Injury Fund of Iowa,**

Appellee,

vs.

**Regena Strable,**

Appellant.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, judge.

An injured worker appeals the district court order in this workers' compensation claim seeking benefits from the Second Injury Fund of Iowa. **Reversed and Case Remanded with Instructions.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Robert C. Gainer and Gregory M. Taylor of Cutler Law Firm, P.C., West Des Moines, for appellant.

Brenna Bird, Attorney General, and Sarah C. Timko, Assistant Attorney General, for appellee.

**Oxley, Justice.**

This case involves workers' compensation benefits payable from the Second Injury Fund of Iowa (Fund) pursuant to Iowa Code section 85.64 (2019), which allocates liability between the employer and the Fund when an employee "suffers a specified second injury," *Delaney v. Second Inj. Fund of Iowa*, 6 N.W.3d 714, 717 (Iowa 2024). Regena Strable injured her ankle at work, resulting in permanent partial disability to her lower leg. That injury in turn caused further physical injuries to her hip and lower back as well as mental injuries in the form of post-traumatic stress disorder and anxiety, referred to as spill-over or sequela injuries.

After she entered a full commutation agreement for the ankle injury and a compromised settlement for the sequela injuries with her employer, Strable sought benefits from the Fund premised on prior carpal tunnel injuries to both wrists a decade earlier. The deputy commissioner denied Strable's request for Fund benefits, concluding that Iowa Code section 85.64 imposes liability on the Fund only when the second injury is *limited* to a scheduled injury identified in that section. The Iowa Workers' Compensation Commissioner (Commissioner) disagreed with the deputy commissioner and granted benefits. On judicial review, the district court reversed the Commissioner, agreeing with the deputy commissioner.

Last term, we decided *Delaney*, where we identified the Commissioner's decision in this case as involving "a materially indistinguishable case" and concluded that "the commissioner's analysis in *Strable* was correct." 6 N.W.3d at 722 (citing *Strable v. Second Inj. Fund of Iowa*, Iowa Workers' Comp. Comm'n No. 1666216.03, 2022 WL 17490657, at *6–7 (Nov. 29, 2022)). We decided *Delaney* on May 10, 2024, after the briefs in this appeal had already been filed.

Strable filed a motion for summary reversal of her appeal based on what we said in *Delaney* about the Commissioner's position in this case. We denied Strable's motion in order to determine whether we left any stray ends in *Delaney*.

I.

When a worker with certain preexisting disabilities "suffers a specified second injury," the Second Injury Compensation Act divides liability for that injury between the current employer and the Fund. *Id.* at 717. "We have noted the Fund . . . encourage[s] the employment of disabled persons 'by making the current employer responsible only for the disability the current employer causes.' " *Gregory v. Second Inj. Fund of Iowa*, 777 N.W.2d 395, 398 (Iowa 2010) (quoting *Second Inj. Fund of Iowa v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994)). Thus, the employer is liable only for that disability associated with the second injury without considering the effect of any preexisting disabilities. *Delaney*, 6 N.W.3d at 717. "The Fund is then liable for 'the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.' " *Id.* (quoting Iowa Code § 85.64(1)).

The allocation made in Iowa Code section 85.64 recognizes that an employee who suffers permanent disability to two different specified body parts may be impaired to a greater extent than the sum of the disabilities associated with each member individually. Section 85.64 limits the employer's responsibility for the second qualifying injury to the extent of the disability associated only with that injury and creates the Fund to cover the difference in the employee's total resulting disability associated with the preexisting disability. *See Delaney*, 6 N.W.3d at 718 (" 'It is the *cumulative* effect' of the injuries that result in industrial disability—'rather than the injuries considered in isolation—

that triggers the Fund's proportional liability.'" (quoting *Second Inj. Fund of Iowa v. Braden*, 459 N.W.2d 467, 470 (Iowa 1990))).

But the Fund's liability is not triggered every time a previously disabled worker suffers a second disabling work injury. Rather, the Act limits the Fund's liability to permanent injuries to explicitly enumerated body parts. *See* Iowa Code § 85.64(1). By statutory mandate, Fund liability triggers only when "an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ." *Id.*

With this general understanding of the Fund's role, we turn to the facts of this case before addressing the Fund's arguments concerning *Delaney*.

## II.

The underlying events are not disputed for purposes of this appeal. Regena Strable, the marketing director at Altoona Nursing and Rehabilitation Center (ANR), offered to retrieve a departing patient's sweater from her room. As she turned to walk down the hall, she rolled her left ankle. As she described it, she "turned, felt a pop in her left ankle, experienced immediate pain, and fell to the floor." This happened on April 25, 2019, just three and a half weeks after Strable started working at ANR. She was terminated from her position on May 15.

Strable tore the peroneal brevis tendon in her ankle. Surgery repaired the ankle, but while it healed and she underwent physical therapy, she wore a heavy cast that caused pain in her left hip, which moved into her lower back. She was diagnosed with sacroiliitis, which worsened in intensity from the altered gait caused by her left ankle injury. Strable also developed mental health injuries related to her decline in functionality postinjury, including post-traumatic stress

disorder and anxiety. The parties agree that her lower back and mental health injuries were spill-over, or sequela, injuries from the ankle injury.

On August 26, Strable filed a petition seeking workers' compensation benefits from ANR. She identified injuries to her left ankle, hip, lower back, left arm, and mental health that she incurred on April 25. On December 18, 2020, Strable reached a full commutation agreement with ANR for the left ankle injury. The petition for commutation identified a 34% permanent disability to the left lower extremity, entitling Strable to a total of $100,546.76 in healing period benefits and permanent partial disability benefits, of which $70,924.05 had been paid. The Commissioner approved the commutation agreement on January 6, 2021.

Strable also entered a compromise settlement with ANR, resolving claimed injuries to her left hip, back, and mental health. The Commissioner approved the $369,377.29 compromise settlement on January 7—the day after approving the commutation agreement. The compromise settlement allocated $127,597.14 toward legal fees and costs, resulting in a weekly settlement rate of $181.63 over the remainder of her life expectancy.

The Fund was not named in the original petition filed against ANR. Strable filed a separate petition against the Fund on April 26, asserting that the left ankle injury was a qualifying second injury. The first injury occurred a decade earlier, in September 2009, when Strable developed carpal tunnel in both wrists while working as a front desk manager at Central Iowa Orthopedics. The parties stipulated that this was a first qualifying injury to the bilateral upper extremities, and that the functional loss from that qualifying injury was 4% of the whole person. But they disputed whether the injury to her ankle was a second qualifying injury.

The deputy commissioner concluded that the ankle injury was not a second qualifying injury based on the compromise settlement with ANR concerning the sequela injuries stemming from the left ankle injury. The deputy therefore denied benefits. According to the deputy, the sequela injuries to Strable's lower back and mental health turned the scheduled lower leg injury into an unscheduled injury, which would be compensated together as an unscheduled injury under Iowa Code section 85.34(2)(*v*).[1] *See Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 16 (Iowa 1993) ("[A] psychological condition caused or aggravated by a scheduled injury is compensable as an unscheduled injury."). The deputy reasoned that allowing Strable to settle with her employer based on an industrial disability that necessarily considered the loss of function of her ankle would result in a double recovery if she was then allowed to recover against the Fund for industrial disability benefits associated with the ankle as a second qualifying injury.

In the intra-agency appeal, the Commissioner reversed. The Commissioner concluded that any recovery from the Fund would be limited to the industrial disability associated only with the two qualifying injuries—the 2009 bilateral upper extremities injury and the 2019 left lower extremity injury—but would

---

[1]Scheduled injuries are those identified in paragraphs (*a*) through (*u*) of Iowa Code § 85.34(2), and they are compensated based on the functional impairment to the specified body part calculated in terms of weeks. *See Bridgestone Ams., Inc. v. Anderson*, 4 N.W.3d 676, 682 (Iowa 2024) (discussing the difference in compensation between scheduled and unscheduled injuries); *Loew v. Menard, Inc.*, 2 N.W.3d 880, 884 (Iowa 2024) (same). Unscheduled injuries are all other "cases of permanent partial disability" under paragraph (*v*), often referred to as "industrial disabilit[ies]," and are compensated based on the employee's lost earning capacity. *Loew*, 2 N.W.3d at 884 (quoting Iowa Code § 85.34(2)(*v*)). Compensation for unscheduled injuries is generally calculated under the "industrial method," *id.*, which "consider[s] not only the employee's functional impairment but also the employee's 'age, education, work experience, and adaptability to retraining, to the extent any of these factors affect the employee's prospects for relocation in the job market,' " *Bridgestone Ams.*, 4 N.W.3d at 682 (quoting *Loew*, 2 N.W.3d at 884). "[T]he amount of compensation for an unscheduled injury is often much greater than for a scheduled injury." *Prewitt v. Firestone Tire & Rubber Co.*, 564 N.W.2d 852, 854 (Iowa Ct. App. 1997).

exclude any disability associated with the subsequent sequela injuries. The parties stipulated that the first qualifying injury from the bilateral upper extremities resulted in 4% disability to the whole person, entitling Strable to 20 weeks of permanent partial disability benefits. Based on the evidence presented in the record, the Commissioner concluded that the ankle injury resulted in a 42% functional impairment to the left lower extremity, entitling Strable to 92.4 weeks of disability benefits under the schedule from her employer (220 weeks times 42%). *See* Iowa Code § 85.34(2)(*p*). Adding these together, the first and second qualifying injuries totaled 112.4 weeks' worth of benefits.

The Commissioner then assessed Strable's industrial disability from the first and second qualifying injuries together. The Commissioner found: "While she is limited by her combined injuries to her upper extremities and left lower extremity, considering all of the factors of industrial disability, I find claimant has established she has sustained 70 percent industrial disability . . . ." That finding entitled Strable to 350 weeks of disability benefits (500 weeks times 70%), *see id.* § 85.34(2)(*v*), from which the Commissioner subtracted the 112.4 weeks associated with the two qualifying injuries, resulting in Fund liability for 237.6 weeks' worth of benefits, totaling $196,602.12. The Commissioner concluded that the Fund's payments should have started on December 26, 2021, 92.4 weeks after her injury.

The Fund sought judicial review of the Commissioner's award. The district court agreed with the deputy commissioner that awarding benefits from the Fund would result in double recovery for Strable, and it reversed the Commissioner's conclusion. The district court concluded that the compromise settlement Strable reached with ANR related to the sequela injury to her back and mental health was based on industrial disability, so that any recovery from

the Fund—also premised on industrial disability—would result in a double recovery.

Strable appealed, and we retained the appeal.

III.

The Fund is liable for workers' compensation benefits only to the extent provided in Iowa Code section 85.64:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this subchapter the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

*Id.* § 85.64(1). We have identified three requirements to trigger Fund liability: "First, that [the employee] has either lost, or lost the use of a hand, arm, foot, leg, or eye. Second, the employee sustained the loss, or loss of use of another such member or organ through a work-related, compensable injury. Third, there must be some permanent injury from the injuries." *Delaney*, 6 N.W.3d at 717–18 (quoting *Second Inj. Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 547–48 (Iowa 1995)).

Applying that test here: First, Strable previously "lost the use of [an] . . . arm," i.e., the carpal tunnel injuries to both arms. *Id.* at 717 (quoting *Bergeson*, 526 N.W.2d at 547). Second, Strable "sustained the . . . loss of use of another such member . . . through a work-related, compensable injury." *Id.* at 717–18 (quoting *Bergeson*, 526 N.W.2d at 547–48). Strable's ankle injury was a

compensable injury to her leg, an enumerated member under section 85.64, and there is no dispute that it was work-related. Third, there is no dispute that Strable suffered "some permanent injury from the injuries." *Id.* at 718 (quoting *Bergeson*, 526 N.W.2d at 548).

The Fund argues that the second qualifying injury must be *limited* to a scheduled injury, and that it has no liability when the second qualifying injury causes a sequela injury that is then compensated as an unscheduled injury. We rejected that argument in *Delaney*. In *Delaney*, an employee's work-related injury to her right leg required knee surgery, which in turn caused lymphedema (a vascular injury) in her lower right leg and foot. *Id.* at 716. Delaney settled her workers' compensation claim with her employer and sought additional benefits from the Fund premised on a first qualifying injury to her lower left leg some thirty-three years earlier. *Id.* The Commissioner concluded that the Fund had no liability because the lymphedema was an injury to the body as a whole, and as a sequela to her knee injury, that meant that her injury "was 'not *limited* to a scheduled member injury.'" *Id.* at 719.

On appeal, we rejected the Commissioner's conclusion that "an injury resulting in the loss of use of a scheduled member was not a qualifying injury under section 85.64 if the injury caused a sequela injury to the body as a whole." *Id.* at 722. We had already concluded that a second qualifying injury "includes 'a loss to another such member *regardless if the second loss includes other injuries.*'" *Id.* (emphasis added) (quoting *Second Inj. Fund of Iowa v. George*, 737 N.W.2d 141, 147 (Iowa 2007)). "And, in *Gregory v. Second Injury Fund of Iowa*, we explained that it was not relevant under section 85.64 that the [first qualifying] injury to the scheduled member subsequently caused an impairment to an unscheduled member." *Id.* (citing *Gregory*, 777 N.W.2d at 400). We agreed

with the Commissioner's analysis in this case, which took *Second Injury Fund of Iowa v. George* and *Gregory* to their logical conclusions. *Id.* (concluding that the Fund is liable under section 85.64 if the first and second qualifying injuries caused a compensable injury to an enumerated member "regardless of whether the injuries caused other enumerated scheduled injuries, *or other nonenumerated or unscheduled injuries.*" (emphasis added) (quoting *Strable*, 2022 WL 17490657, at *7)).

That the qualifying second injury in *George* involved two scheduled injuries did not prevent us from extending its reasoning to a second qualifying injury to an enumerated member involving a nonscheduled injury. *Id.* A closer look at *George* clarifies this point. In *George*, an employee suffered a first qualifying injury to her left leg and later injured both knees while kneeling to repair a copier. 737 N.W.2d at 144. The deputy commissioner concluded that the bilateral leg injury was to "another such member," i.e., a second qualifying injury, because it was a scheduled injury under what is now section 85.34(2)(*t*), which separately compensates for the functional impairment resulting from an injury to both legs—as opposed to the functional impairment resulting from an injury to one leg. *George*, 737 N.W.2d at 144, 147. The Commissioner affirmed, but on a different rationale: the right leg was a different member than the left leg, which is all that was required to trigger section 85.64(1). *Id.* at 145. On judicial review, the district court and court of appeals both agreed with the deputy commissioner's conclusion that it was the scheduled nature of the bilateral injury that mattered in determining whether Fund liability was triggered. *Id.* Although the Fund had been held liable through each phase of agency and judicial review, we granted further review to clarify the basis for the Fund's liability.

We started (and ended), as we do here, with the language of the relevant statute: Iowa Code section 85.64. "A plain reading of the statute requires us to interpret the phrase 'which has resulted in the loss of or loss of use of another such member or organ' to mean a loss to another such member *regardless if the second loss includes other injuries.*" *George*, 737 N.W.2d at 147 (emphasis added). We rejected the deputy commissioner's and the district court's conclusions that the second injury qualified only because it was compensated as a scheduled injury under 85.34(2)(*t*). *Id.* Rather, "[l]iability of the Fund under section 85.64 expressly turns on the part(s) of the body permanently injured in successive injuries," not how they are compensated. *Gregory*, 777 N.W.2d at 400 ("Given our decision in *George* that a subsequent injury to an enumerated member is not disqualified as a second injury merely because it occurred simultaneously with an injury to another enumerated member, we believe it would be senselessly inconsistent to conclude a first qualifying injury cannot likewise occur simultaneously with an injury to another such member.").

Here, the Fund argues that our decision in *Delaney* ignored or misunderstood two other decisions: *Second Injury Fund v. Nelson*, 544 N.W.2d 258 (Iowa 1995), and *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12. But neither *Nelson* nor *Mortimer* require a different result as the Fund suggests. *Mortimer* involved an employee whose psychological condition was exacerbated by a work-related injury when his foot was crushed by an I-beam, requiring four toes to be amputated. 502 N.W.2d at 13. We framed the issue as whether "workers' compensation benefits [were] available for a psychological condition caused or aggravated by a scheduled injury." *Id.* at 15. We first recognized that "when there is injury to some scheduled member and also to parts of the body not included in the schedule, the resulting disability is compensated on the basis of an

unscheduled injury." *Id.* at 16. We then concluded there was no reason to treat the psychological exacerbation any different than cases involving physical exacerbations and held that a psychological sequela should be compensated under what is now section 85.34(2)(*v*). *Id.* at 17 ("[T]his same rationale should apply whether the spill over effects for the scheduled injury are physical or mental."). Notably, *Mortimer* involved a review-reopening proceeding against the employer, not a claim against the Fund. *Id.* at 13. *Delaney* did not undermine *Mortimer*'s holding.

*Nelson*, on the other hand, did involve a claim against the Fund. *See* 544 N.W.2d at 262. In *Delaney*, we relied on *Nelson* to explain that under our caselaw, "the Fund is liable for benefits only where both of the employee's injuries resulted in the loss or loss of use of the scheduled members set forth in the statute." *Delaney*, 6 N.W.3d at 718 (citing *Nelson*, 544 N.W.2d at 270). Thus, in *Nelson*, we held that a shoulder injury was not a qualifying second injury even though it "affect[ed]" the employee's arm. 544 N.W.2d at 269. The Commissioner's contrary conclusion was "inconsistent with the clear language of section 85.64," where that section explicitly listed an arm but not a shoulder. *Id.* at 269–70 ("[T]he word 'arm' as used in section 85.64 simply does not include the shoulder."). *Nelson* simply means that the qualifying injury must result in the loss of use of an enumerated member—it is not enough that the injury merely affected, without disabling, an enumerated member. Strable meets that requirement here.

## IV.

The Fund argues that even if it has some liability, the Commissioner erred in its calculation, and it seeks guidance as to how its liability is calculated and when its payments commence if the second qualifying injury extends beyond the qualifying member. *See* Iowa Code § 85.64(1) ("In addition to such compensation

[from the employer for the second qualifying injury], and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this subchapter the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ."); *see also Braden*, 459 N.W.2d at 473 ("Unlike ordinary workers' compensation benefits, however, the Second Injury Fund's obligation cannot be assessed until the employer's liability is fixed.").

The Fund's real concern is that the employee will be compensated twice for the same injury if the employer's liability for the second qualifying injury is calculated using the industrial disability method under Iowa Code section 85.34(2)(*v*), rather than the functional impairment method associated with the scheduled member. But we explained in *Delaney* that our holding "will not result in a double recovery." *Delaney*, 6 N.W.3d at 722 (quoting *Gregory*, 777 N.W.2d at 401). That is because the Commissioner engages in a "new and discrete assessment" in calculating the Fund's liability by considering "only the extent to which [the employee's] earning capacity was diminished by the combined effect of the . . . losses to her *enumerated extremities*." *Id.* (alteration and omission in original) (quoting *Gregory*, 777 N.W.2d at 401).

Nor does the fact that Strable settled with her employer affect the Fund's liability. In *Gregory*, we didn't allow the parties' settlement to impede the proper calculation of the Fund's credit for the compensable value of the partial loss of use of the enumerated member. *See Gregory*, 777 N.W.2d at 400; *see also Delaney*, 6 N.W.3d at 718 (noting that the Fund is not bound by a settlement with the employer to which it is not a party).

Yet, we do agree with the Fund that the Commissioner erred in its calculation of the Fund's liability. The Commissioner concluded that "[r]ecovery against the Fund is limited to the two scheduled members, the 2009 upper extremity injury, and the 2019 left lower extremity injury." Under the statute, ANR, as Strable's employer, is "liable . . . for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability," and the Fund is liable for the "remainder" of the employee's "degree of permanent disability involved after" subtracting "the compensable value" of the preexisting disability. Iowa Code § 85.64(1). Applying that statutory formula here, Strable's "latter injury" is the left lower leg injury and the sequela injury to her hip, lower back, and mental health. Her "preexisting disability" is that associated with her bilateral carpal tunnel. And the "degree of permanent disability involved" is her total disability considering both injuries. So, it is more accurate to say that the Fund is liable for the incremental increase in Strable's disability associated with the combined effect of both enumerated injuries as compared to the disability associated only with the second qualifying injury, for which the employer is liable. When, as here, the second qualifying injury extends beyond the enumerated member, the Fund should get a credit for the full amount of the employer's liability for the second qualifying injury. The Commissioner erred in subtracting only the amount of disability associated with the scheduled lower leg injury without also including the employer's liability for the accompanying sequela injury.

To calculate the Fund's liability, the Commissioner must first assess Strable's industrial disability considering both qualifying injuries, i.e., the bilateral carpal tunnel and the lower left leg—*including* its sequela injuries to her hip, lower back, and mental health. The Commissioner should then subtract the

20 weeks associated with the bilateral carpal tunnel. Finally, the Commissioner should also subtract the discrete industrial disability associated with the lower left leg and sequela *without* considering the effect of Strable's bilateral carpal tunnel. The result is that ANR is allocated that amount of Strable's overall industrial disability associated with the left lower leg and its sequela injuries, while the Fund is liable for the remaining amount of Strable's industrial disability associated only with the combination of her carpal tunnel and lower left leg—without considering the sequela injuries.

Thus, we agree with the Fund that the Commissioner's calculation, which completely ignored the sequela injury that spilled over from Strable's lower left leg injury, overinflated the amount of the Fund's liability and moved up the timing for its payments. Under Iowa Code section 85.64(1), an employee does not receive compensation from the Fund until "after the expiration of the full period provided by law for the payments thereof by the employer." That time period will depend on the number of weeks associated with the Commissioner's calculation of the discrete industrial disability associated with Strable's lower left leg and related sequela injuries—without considering the cumulative effect of her bilateral carpal tunnel injuries.

V.

We reverse the district court's order concluding that the Fund has no liability and remand for further proceedings. Because the Commissioner miscalculated the Fund's liability, we direct that the case be remanded to the commission for a determination of the amount and timing of the Fund's liability consistent with this opinion.

**Reversed and Case Remanded with Instructions.**